1  **JONATHAN W. BIRDT – SBN 183908**          e-filed _____
   **Law Office of Jonathan W. Birdt**
2  18252 Bermuda Street
   Porter Ranch, CA 91326
3  Telephone:     (818) 400-4485
4  Facsimile:     (818) 428-1384
   jon@jonbirdt.com
5  Attorney for Plaintiff Robert Thomson

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11

12  ROBERT THOMSON,                )   CASE NO.  2:11-cv-06154-SJO-JC
                                   )
13              Plaintiff,         )   **PLAINTIFFS' MOTION FOR SUMMARY**
                                   )   **JUDGMENT**
14     vs.                         )
                                   )   **(FILED CONCURRENTLY WITH**
15                                 )   **SEPARATE STATEMENT OF**
    TORRANCE POLICE DEPARTMENT and )   **UNDISPUTED FACT)**
16  THE LOS ANGELES COUNTY SHERIFFS )
    DEPARTMENT,                    )
17                                 )   DATE: February 27, 2012
                Defendants.        )   TIME:  10:00 a.m.
18                                 )   HON.:  Judge S. James Otero
                                   )
19  _____ )

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. FACTUAL BACKGROUND

"Plaintiff applied with the Torrance Police Department (TPD) and Los Angeles County Sheriff's (LASD) Department for a permit to carry a concealed weapon pursuant to California Penal Code Section 12050.  Plaintiff was denied a permit because he did not meet the Good Cause Policy of either Department."  (Paragraph 1, Joint Report of Counsel).

## II. LEGAL ISSUES

"The sole legal issue in this case is whether Defendants violated Plaintiff's civil rights by refusing to issue Plaintiff a permit to carry a concealed weapon (CCW), and more specifically, whether the policies for issuing permits to carry a concealed weapon as set forth by the TPD and LASD respectively violate Plaintiff's constitutional rights under the Second Amendment of the United States Constitution."  (Paragraph 3, Joint Report of Counsel).

## III. UNDISPUTED FACTS

The California Legislative scheme requires a CCW Permit to enable Plaintiff to possess a functional firearm for self-defense purposes outside of the home.  SSUDF #1.  Plaintiff applied with the Torrance Police Department (TPD) and Los Angeles County Sheriff's (LASD) Department for a permit to carry a concealed weapon pursuant to California Penal Code Section 12050.  Plaintiff was denied a permit because he did not meet the Good Cause Policy of either Department.  SSUDF #2.  Defendants require documentation of a Clear and Present Danger to the applicant before they will issue a CCW Permit.  SSUDF #3.

## IV. STANDARD OF REVIEW

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FRCP 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## V. LASD POLICY

The LASD official policy on good cause states:

"According to Los Angeles County Sheriff's Department policy (5-09/380.1 0) and the California Supreme Court (CBS, Inc. v. Block, (1986) 42 Cal.3d 646), good cause shall exist only if there is convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

This policy violates the Second Amendment under any stretch of the imagination as it is tantamount to a ban on concealed weapon permits absent a "Clear and Present Danger."

## VI. TORRANCE POLICY

The Torrance Policy states that the applicant must document:

(i) the applicant is dealing with circumstances that distinguish the applicant from other members of the public, in that there is a clear, present, and documented danger to the applicant, and
(ii) there are no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property.

This policy violates the Second Amendment under any stretch of the imagination as it is tantamount to a ban on concealed weapon permits absent a "Clear and Present Danger."

VII. **DISTRICT OF COLUMBIA V HELLER**

In Heller, after an exhaustive analysis of the text of the Second Amendment and the founding-era sources of its original public meaning, the Supreme Court stated unequivocally that the Second Amendment guarantees the right to "keep and bear arms" and is "the individual right to possess and carry weapons in case of confrontation.". District of Columbia v. Heller (2008) 128 S. Ct. 2783, 2797.

> At the time of the founding, as now, to "bear" meant to "carry." See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989) (hereinafter Oxford). When used with "arms," however, the term has a meaning that refers to carrying for a particular purpose-- confrontation. In *Muscarello v. United States, 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998)*, in the course of analyzing the meaning of "carries a firearm" in a federal criminal statute, Justice Ginsburg wrote that "[s]urely a most familiar meaning is, as the *Constitution's Second Amendment* . . . indicate[s]: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Id., at 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111* (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed. 1990)). We think that Justice Ginsburg accurately captured the natural meaning of "bear arms." Although the phrase implies that the carrying of the weapon is for the purpose of "offensive or defensive action," it in no way connotes participation in a structured military organization. Id. at 2794.

The Supreme Court has explained that the natural meaning of "bear arms" is to "'wear, bear, or carry ...upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.'" Id. at 2793 (quoting Muscarello v. United States (1998) 524 U.S. 125, 143). Further, Heller states that the right to bear arms does not bar "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Id. at 2817. The obvious and inescapable implication is that there is a constitutional fundamental right to carry firearms in places which are not "sensitive" for the purpose of self-defense protected by and embodied within the Second Amendment.

VIII. **MCDONALD V CITY OF CHICAGO**

Two years later in McDonald v. City of Chicago, the United States Supreme Court made it clear that the Second Amendment was applicable to the States and subject to the same protection as other rights like the First Amendment. McDonald v. City of Chicago (2010) 130 S. Ct. 3020, at 3027 (2010).

IX. **DEFENDANTS EXERCISE DISCRETION INCONSISTENT WITH A FUNDAMENTAL RIGHT BY CONDITIONING EXERCISE OF A THAT RIGHT ON DOCUEMNTATION OF A CLEAR AND PRESENT DANGER**

A CCW Permit issued pursuant to California Penal Code 12050 is the only mechanism in California by which a Citizen can exercise their right to bear arms outside of the home. Pursuant to the statutory scheme, the California Attorney General has created a form application for residents of the State of California to use when applying for a permit thereunder; however, the decision to issue the permit rests with Chiefs of Police and County Sheriffs.

> In *Heller,* the Supreme Court held the Second Amendment protects an individual right "to possess **and carry** weapons in case of confrontation," unconnected with service in a militia…. the court held the Second Amendment right recognized in *Heller* is "fully applicable to the States."…A plurality of the *McDonald* court concluded the Second Amendment right applies to the states because it is "fundamental" to the American "scheme of ordered liberty"
> People v. Delacy (2011) 192 Cal.App.4th 1481. (emphasis added)

Defendants carry the burden of establishing the nexus between their need and their infringement upon a Fundamental Right. Under Cantwell v. Connecticut (1940) 310 U.S. 296, and progeny, States and localities may not condition a license necessary to engage in constitutionally protected conduct on the grant of a license officials have *discretion to withhold*. Further, a host of prior restraint cases establish that "the peaceful enjoyment of freedoms *which the Constitution guarantees*" may not be made "contingent upon the uncontrolled will of an official." Staub v. Baxley (1958) 355 U.S. 313, 322 (emphasis added).

The Ninth Circuit recently found, in a prior restraint case decided on a First Amendment claim that:

> Our analysis is guided by certain well-established principles of First Amendment law. In public places such as streets and sidewalks, "the State [may] enforce a content-based exclusion" on speech if the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). For content-neutral regulations, the State may limit "the time, place, and manner of expression" if the regulations are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.*
> We conclude that the Ordinance fails to satisfy the narrow tailoring element of the Supreme Court's "time, place, and manner" test. The Ordinance is not narrowly tailored because it regulates significantly more speech than is necessary to achieve the City's purpose of improving traffic safety and traffic flow at two major Redondo Beach intersections, and the City could have achieved these goals through less restrictive measures, such as the enforcement of existing traffic laws and regulations. Because the Ordinance does not constitute a reasonable regulation of the time, place, or manner of speaking, it is facially unconstitutional.
> Comite de Jornaleros de Redondo Beach v. City of Redondo Beach (9th Cir., Sept. 16, 2011, 06-55750) 2011 WL 4336667.

## X.  CONCLUSION

> Our decision in Heller points unmistakably to the answer. Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in Heller, we held that individual self-defense is "the central component" of the Second Amendment right.  McDonald v. City of Chicago (2010) 130 S. Ct. 3020, at 3037.

This Court is respectfully requested to find that defendants pre-condition of documentation of a Clear and Present Danger before granting permission to exercise a Fundamental Right does not pass Constitutional Scrutiny and Violates Plaintiffs Rights under the Second Amendment.  Under California Law the only way to bear a functional firearm for self-defense is with a CCW permit.  Defendants herein withhold permission to exercise this fundamental right by requiring proof of a Clear and Present Danger.  Such condition precedent to the exercise of a fundamental offends constitutional jurisprudence and all common sense.  A gun is not a crime, it is a constitutionally protected right, and the exercise thereof by law abiding citizens who seek training and licensing present no risk to public safety.

December 17, 2011                                  ___/s/_____

                                                              Jonathan W. Birdt, Esq.