1  ANDREA SHERIDAN ORDIN, County Counsel
   ROGER H. GRANBO, Assistant County Counsel
2  JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
   (SBN 191477) • *jlehman@counsel.lacounty.gov*
3  648 Kenneth Hahn Hall of Administration
   500 West Temple Street
4  Los Angeles, California 90012-2713
   Telephone: (213) 974-1908 · Fax: (213) 626-2105
5
   Attorneys for Defendant
6  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 ROBERT THOMSON,                    CASE NO. CV 11-06154 SJO (JCx)

12          Plaintiff,                **DEFENDANT LOS ANGELES
                                      COUNTY SHERIFF'S
13      v.                            DEPARTMENT'S NOTICE OF
                                      MOTION & MOTION FOR
14 TORRANCE POLICE DEPARTMENT         SUMMARY JUDGMENT;
   and THE LOS ANGELES COUNTY         MEMORANDUM OF POINTS &
15 SHERIFF'S DEPARTMENT,              AUTHORITIES IN SUPPORT
                                      THEREOF**
16          Defendants.
                                      [Filed concurrently with LASD
17                                    Separate Statement of Uncontroverted
                                      Facts & Conclusions of Law;
18                                    Declarations & Exhibits in Support
                                      Thereof; Proposed Order
19
                                      MSJ Date:    **February 27, 2012**
20                                    Time:        10:00 a.m.
                                      Crtrm:       1
21

22

23

24

25

26

27

28

HOA.848047.1

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **February 27, 2012 at 10:00 a.m.,** or as soon thereafter as the matter can be heard in Courtroom 1 of the above-entitled court, the Honorable S. James Otero presiding, located at 312 North Spring Street, Los Angeles, California, 90012.  Defendant Los Angeles County Sheriff's Department ("LASD") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment or, alternatively, partial summary judgment on the grounds that there are no triable issues as to any material fact and that the LASD is entitled to judgment, or alternatively partial summary judgment, as a matter of law.

Specifically, the LASD moves for summary judgment on the following grounds:

1.    The LASD's policies and practices in implementing California Penal Code section 12050 do not violate Plaintiff's constitutional rights.

2.    The LASD's denial of Plaintiff's application for a concealed weapons permit did not violate the Second Amendment to the United States Constitution.

If for any reason, summary judgment cannot be granted, the LASD moves for partial summary judgment as to each of the above issues.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Separate Statement of Uncontroverted Facts and Conclusions of Law submitted by the LASD Defendants and the exhibits attached thereto, and the records, files and papers herein; and on such other matters as may be presented by the other parties in this matter, and at the time of the hearing.

//
//
//
//
//

1    The parties have met and conferred in compliance with Local Rule 7-3.  Said

2    conference took place on October 24, 2011.

3

4    DATED: December 22, 2011          Respectfully submitted,

5                                      ANDREA SHERIDAN ORDIN

6                                      County Counsel

7

8                                      By

9                                         JENNIFER A.D. LEHMAN
                                          Principal Deputy County Counsel
10

11                                     Attorneys for Defendant
                                       LOS ANGELES COUNTY SHERIFF'S
12                                     DEPARTMENT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOA.848047.1

CV 11-06154 SJO (JCx)

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................4

STATEMENT OF FACTS ...........................................................................................4

    California's Licensing Laws......................................................................................4

    LASD CCW Application Process.............................................................................5

    LASD's Good Cause Requirement...........................................................................6

    Plaintiff's CCW Application to the LASD ..............................................................8

ARGUMENT ................................................................................................................9

I.    THERE IS NO CONSTITUTIONAL RIGHT TO CARRY A LOADED
    CONCEALED WEAPON IN PUBLIC UNDER THE SECOND AMENDMENT. ...........9

    A.    The Second Amendment Does Not Include the Right to Keep and Carry a
        Weapon in Any Manner. ..........................................................................10

    B.    California Penal Code Section 12050's Restrictions on Concealed Weapons
        Do Not Infringe on the Right of Self-Defense in the Home. ...................12

II.    THE LASD'S LICENSING PRACTICES WITHSTAND CONSTITUTIONAL
    SCRUTINY.................................................................................................13

III.    THE LASD DID NOT IMPROPERLY DENY PLAINTIFF'S APPLICATION. ..............17

CONCLUSION............................................................................................................18

1

## TABLE OF AUTHORITIES

2
 **Page**

3

4 <u>**CASES**</u>

5 *Abrams v. Johnson,*
     521 U.S. 74, 91 (1997).................................................................................17
6

7 *Assenza v. City of Los Angeles,*
     Los Angeles Superior Court Case No. BC 115813 (1994)......................7

8 *CBS Inc. v. Block,*
     42 Cal.3d 646, 655 (1986). .........................................................................5
9

10 *Clark v. Jeter,*
      486 U.S. 456, 461 (1988)...........................................................................13

11 *District of Columbia v. Heller and Communities of Color,*
      25 Harv.BlackLetter J. 133, 149 (Spring 2009).....................................14
12

13 *District of Columbia v. Heller,*
      554 U.S. 570, 128 S.Ct. 2783, 2788, 2822 (2008)...................................9

14 *Gamble v. United States,*
      30 A.3d 161, ___ (2011 D.C. App. LEXIS 615 at *7-8).......................10
15

16 *Gifford v. City of Los Angeles,*
      88 Cal.App.4th 801, 805 (2001) ...............................................................4

17 *Gonzales v. Carhart,*
      550 U.S. 124, 146 (2007)...........................................................................17
18

19 *Kelley v. Johnson,*
      425 U.S. 238, 247 (1976)...........................................................................15

20 *Marshall v. Walker,*
      958 F.Supp. 359, 365 (N.D. Ill. 1997) ...................................................16
21

22 *McDonald v. City of Chicago,*
      130 S.Ct. 3020, 3026, 3044 (2010)...............................................9, 10, 13

23 *Medtronic, Inc. v. Lohr,*
      518 U.S. 470, 475 (1996)...........................................................................13
24

25 *Nichols v. County of Santa Clara,*
      223 Cal.App.3d 1236, 1241 (1990) ...........................................................5

26 *People v. Ellison,*
      196 Cal.App.4th 1342 (2011) ..................................................................11
27

28 *People v. Flores,*
      169 Cal.App.4th 568, 575-576 (2008) ...............................................10, 11

*People v. Hale,*
    43 Cal.App.3d 353, 356 (1974) .................................................................................. 11, 12

*People v. Hodges,*
    70 Cal.App.4th 1348, 1357 (1999) ............................................................................. 12

*People v. Marin,*
    795 N.E.2d 953, 958–59 (Ill. App. 2003) ................................................................. 16

*People v. West,*
    422 N.E.2d 943, 945 (Ill.App. 1981) ........................................................................ 16

*People v. Yarbrough,*
    169 Cal.App.4th 303, 312-314 (2008) ................................................................. 10, 11, 15

*Peruta v. County of San Diego,*
    758 F.Supp.2d 1106 (on appeal to 9th Circuit) ................................................ 13, 14, 15

*Planned Parenthood of Southeastern Penn. v. Casey,*
    505 U.S. 833, 878 (1992) .......................................................................................... 17

*Richards v. County of Yolo,*
    2011 U.S. Dist. LEXIS 51906 (on appeal to 9th Cir) .............................................. 12

*Robertson v. Baldwin,*
    165 U.S. 275, 281-282 (1897) .................................................................................. 10

*Schall v. Martin,*
    467 U.S. 253, 264 (1984) .......................................................................................... 15

*State v. Cole,*
    665 N.W.2d 328, 344 (2003) .................................................................................... 17

*United States v. Marzzarella,*
    614 F.3d 85, 97 (3rd Cir. 2010) ............................................................................... 13

*United States v. Morrison,*
    529 U.S. 598, 618 (2000) .......................................................................................... 13

*United States v. Salerno,*
    481 U.S. 739, 750 (1987) .......................................................................................... 15

*United States v. Skoien,*
    614 F.3d 638, 641 (7th Cir. 2010) ............................................................................ 13

**STATE STATUTES**

California Penal Code § 12025(a)(2) ............................................................................. 10

California Penal Code § 12050 .............................................................................. 4, 12, 15

California Penal Code § 12050(a)(1)(A) ......................................................................... 4

California Penal Code § 830.6 ........................................................................................... 5

California Penal Code sections 12025 and 12031 ............................................... 11, 15, 17

Penal Code sections 12050 – 12054 ............................................................................. 4, 6

**FEDERAL STATUTES**

42 U.S.C. § 1983 .............................................................................................................. 9

## INTRODUCTION

Plaintiff Robert Thomson claims that he was improperly denied a concealed weapons (CCW) permit by moving Defendant LASD, as well as the Torrance Police Department.  Plaintiff alleges that the LASD's definition of good cause, as required by California Penal Code § 12050, violates the Second Amendment of the United States Constitution.  Plaintiff's argument is unsupported by the law as there is no constitutional right to carry a concealed firearm in public.  It is Defendants, not Plaintiff, who should be entitled to summary judgment.

## STATEMENT OF FACTS

### California's Licensing Laws

California Penal Code § 12050(a)(1)(A) authorizes a county sheriff to issue a license to carry a concealed pistol, revolver, or other firearm capable of being concealed upon the person (hereinafter "CCW permit") upon the existence of good cause, and provided that the applicant meets other criteria provided for in the Penal Code.  California is a "*may issue*" state, meaning that law enforcement officials have the discretion to grant or deny a permit based on a number of statutory factors.[1] Penal Code sections 12050 – 12054 set forth the general criteria that California CCW applicants must meet.  Applicants must be of good moral character, be a resident of or spend substantial time in the County in which they apply, demonstrate good cause and take a firearms course.  (See Penal Code §§ 12050-12054.)  The language of Section 12050 is permissive, not mandatory, and gives extremely broad discretion to a sheriff or police chief in issuing concealed weapons licenses — even to individuals who meet the minimum statutory requirements. *Gifford v. City of Los Angeles*, 88 Cal.App.4th 801, 805 (2001) quoting in part, *Nichols v. County of Santa*

---

[1]In contrast, "shall issue" states require the issuance of a permit to any person who meets certain minimum requirements.

1  *Clara*, 223 Cal.App.3d 1236, 1241 (1990); *CBS Inc. v. Block*, 42 Cal.3d 646, 655

2  (1986).

3  **LASD CCW Application Process**

4  Paul Tanaka is the Undersheriff for Los Angeles County. As part of his

5  responsibilities as Undersheriff, he has been designated to act as the Sheriff's sole

6  authorized representative for reviewing applications for CCW licenses for the

7  County of Los Angeles. While members of his staff make recommendations

8  regarding applications, he is the final decision-maker. (LASD UF 1[2]) As part of his

9  evaluation of CCW applications, he will review the entire application packet and

10  any and all supporting documentation. (LASD UF 2)

11  In Los Angeles County, there are four distinct categories of CCW licenses:

12  Employment, Standard, Judges, and Reserve Police Officers. The Employment

13  CCW license is issued only to a person who spends a substantial period of time in

14  his or her principal place of employment or business in Los Angeles County. The

15  Standard CCW license is issued to residents of Los Angeles County or to residents

16  of a particular city within Los Angeles County. The Judge CCW license is issued to

17  California judges, full-time commissioners, and to federal judges and magistrates of

18  the federal courts. The Reserve Police Officer CCW license may be issued to

19  reserve police officers appointed pursuant to California Penal Code § 830.6. (LASD

20  UF 3)

21  If an applicant resides in an incorporated city not policed by the LASD, the

22  applicant must apply to the chief of police of their city of residence for a concealed

23  weapons license and have such application acted upon. Within 60 days after a

24  denial of such application, such city resident may file a separate application with the

25

26  _____

27  [2] The LASD Defendants' Undisputed Facts are contained in its Separate
Statement of Undisputed Facts.

28

1   LASD, attaching a copy of the application denied by the chief of police.  The LASD

2   will exercise independent discretion in granting or denying licenses to such person

3   but may review, consider, and give weight to the grounds upon which such denial

4   was made.  (LASD UF 4)  As set forth in California Penal Code sections 12050-

5   12054, CCW applicants must be of good moral character, be a resident of, or spend

6   substantial time in the County they apply in, take a firearms course, and demonstrate

7   good cause for the license.  (LASD UF 5)

8        **LASD's Good Cause Requirement**

9        The ability of private citizens to carry a concealed weapons is of great

10   concern to the LASD.  The LASD's overriding policy is that no CCW license should

11   be granted merely for the personal convenience of the applicant.  No position or job

12   application in itself shall constitute good cause for the issuance, or for the denial, of

13   a CCW license.  (LASD UF 6)  The LASD defines "good cause" under California

14   Penal Code section 12050 as requiring:

15             convincing evidence of a clear and present danger to life

16             or of great bodily harm to the applicant, his spouse or

17             dependent child, which cannot be adequately dealt with by

18             existing law enforcement resources and which danger

19             cannot be reasonably avoided by alternative measures, and

20             which danger would be significantly mitigated by the

21             applicant's carrying of a concealed firearm.  (LASD UF

22             7)[3]

23   Each CCW application is individually reviewed for cause.  The LASD's definition

24   of good cause has been in existence since at least 2005.  This definition of good

25   ————————————————

26       [3]Defendant Torrance Police Department maintains a similar definition

27   requiring a "clear, present and documented danger to the applicant, and ... no
feasible alternative means of protection...")

28

         

1   cause, or one similar to it, is utilized by many other cities and counties within

2   California, including San Diego.[4]  (LASD UF 8)

3       In evaluating whether an applicant has established good cause, an applicant's

4   stated reason of self-defense is not enough.  (LASD UF 9)  The applicant must

5   demonstrate a credible threat of violence which would justify the need to possess a

6   concealed weapon.  If an applicant claims that he or she has been threatened in

7   his/her application, the LASD looks for documentation of that threat, such as police

8   reports or other evidence.  (LASD UF 10)

9       One of the purposes for the LASD's policy is to protect against gun violence

10  to the community at large, as well as to protect officers conducting law enforcement

11  operations on the streets.  (LASD UF 11)  Gun violence is a problem throughout the

12  State of California and Los Angeles County is no exception.  The vast majority of

13  homicides in Los Angeles County are committed with the use of guns.  Handguns

14  are of particular concern because they are much more likely to be used than

15  shotguns and rifles.  Because handguns are small, easy to conceal, and deadly at

16  short range, they are of paramount concern and danger.  Further, most of the violent

17  acts committed in this County involving the use of guns are by gang members.

18  (LASD UF 12)

19      The presence of more guns on the streets of Los Angeles County creates

20  many problems for law enforcement officers.  Officers are often charged with

21  monitoring public gatherings as well as with breaking up public nuisances.  Officers

22  must act quickly whenever a disturbance occurs.  Often times, this involves isolating

23  one or two problem individuals.  However, if multiple persons within a crowd are

24  carrying concealed weapons, this creates an increased likelihood that guns will be

25  

26      [4]The City of Los Angeles also maintains the same good cause requirement, as

27  shaped by *Assenza v. City of Los Angeles*, Los Angeles Superior Court Case No. BC
    115813 (1994).

28

1   brandished or used.  Thus, the increased presence of guns creates not only increased

2   safety problems for officers but also for members of the community at large.

3   (LASD UF 13)  It is the LASD's position that increasing the numbers of concealed

4   weapons in the community increases the threat of gun violence to the community at

5   large, to those who use the streets and go to public accommodations, and to law

6   enforcement officers patrolling the streets.  Further, the increased presence of

7   concealed handguns make law enforcement operations more difficult thus taking

8   away valuable resources which would be better used conducting law enforcement

9   operations.  (LASD UF 14)  Los Angeles County's good cause requirement is

10  intended to drastically restrict the number of persons who are secretly armed in the

11  County.  (LASD UF 15)  At present, there are approximately 400 concealed

12  weapons permits that were issued by the LASD.  The population of Los Angeles

13  County was estimated to be 10,441,080 people as of January 2010.  (LASD UF 16)

14  **Plaintiff's CCW Application to the LASD**

15      On or about April 7, 2011, Plaintiff submitted a CCW application to the

16  LASD. (UF 17).  In his application, Plaintiff states as justification:

17          I am a licensed California Bail Agent.  I have been
             licensed for over three years.  I am alone when I meet with
18          co-signers and defendants at their homes in violent high
             crime areas within Los Angeles County such as Compton,
19          Inglewood, Watts, and South Los Angeles as well as city
             and county jails to fill out paperwork and receive payment
20          for I am called to post bail at all hours of the day and
             night.  Often when I bail out a person I am in
21          neighborhoods where other suspects are a danger to me.  I
             don't' know the backgrounds of clients who may be
22          disgruntled and have a grudge against me.  While in the
             process of my Bail Agent duties, I sometimes have in my
23          possession over $10,000 in cash.

24          I fear great bodily injury or death from an armed assailant
             who has the intent to steal my case of harm me.  I am a
25          man of small stature, and work very late hours of the
             night.  The criminal element that I deal with presents a
26          danger to my safety that cannot be mitigated by law
             enforcement resources or other means available to me.  I
27          don't have any other means of defending myself.

28  (LASD UF 18).  The LASD reviewed Plaintiff's application and determined that he

1  failed to show good cause as required by LASD policy, and as defined above.

2  Specifically, Plaintiff failed to show convincing evidence of a clear and present

3  danger to life or of great bodily harm to the applicant, his spouse or dependent child,

4  which cannot be adequately dealt with by existing law enforcement resources and

5  which danger cannot be reasonably avoided by alternative measures, and which

6  danger would be significantly mitigated by the applicant's carrying of a concealed

7  firearm.  (LASD UF 19).

8      Plaintiff now sues Defendants LASD and the Torrance Police Department

9  claiming that the denial of his CCW application violates his Second Amendment

10  right to bear arms.  All parties are filing cross-motions for summary judgment.

11  **ARGUMENT**

12  **I.   THERE IS NO CONSTITUTIONAL RIGHT TO CARRY A LOADED
      CONCEALED WEAPON IN PUBLIC UNDER THE SECOND**
13  **AMENDMENT.**

14      To prevail under 42 U.S.C. § 1983, Plaintiff must show a violation of a

15  constitutional right.  (Ninth Circuit Model Jury Inst. 9.4.)  Plaintiff's lawsuit fails at

16  the outset because there is no constitutional right to carry a loaded concealed

17  weapon in public under the Second Amendment.

18      In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2788, 2822

19  (2008), the United States Supreme Court held that the Second Amendment protects

20  an individual's right to possess firearms <u>in the home</u> for self-defense and that the

21  city's total ban on handguns, as well as its requirement that firearms in the home be

22  kept nonfunctional even when necessary for self-defense, violated that right.  In

23  *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3026, 3044 (2010), the court

24  evaluated restrictions similar to those in *Heller* and held that the Due Process Clause

25  of the Fourteenth Amendment incorporates the Second Amendment right to possess

26  a handgun in the home for self-defense.

27

28

HOA.848047.1                                                    CV 11-06154 SJO (JCx)

-9-

1

2   **A.    The Second Amendment Does Not Include the Right to Keep and Carry a Weapon in Any Manner.**

3

4   Plaintiff argues that the decisions regarding the ability to have a weapon in

5   one's home also establish his right to carry a concealed weapon in public.  However,

6   the law does not support his position.  Since 1897, in *Robertson v. Baldwin*, 165

7   U.S. 275, 281-282 (1897), the Supreme Court recognized that the Second

8   Amendment right of people to keep and bear arms is not infringed by laws

9   prohibiting the carrying of concealed weapons.  That principle has not changed.  In

10  *Heller,* the Supreme Court determined that the "core right" embodied in the Second

11  Amendment does not include the right to keep and carry any weapon in any manner:

12          the right secured by the Second Amendment is not
            unlimited.  From Blackstone through the 19th-century
13          cases, commentators and courts routinely explained that
            the right [to keep and bear arms] was not a right to keep
14          and carry any weapon whatsoever in any manner
            whatsoever and for whatever purpose.

15  *Heller,* 128 S.Ct. at 2816.  While *Heller* does not specifically address concealed

16  weapons in public, it does acknowledge that the Second Amendment right to bear

17  arms is limited.

18          Thus far, no court has extended *Heller* or *McDonald* to bestow a

19  constitutional right to carry a concealed weapon in public.  See e.g., *Gamble v.*

20  *United States*, 30 A.3d 161, ___ (2011 D.C. App. LEXIS 615 at *7-8).  Instead,

21  courts have upheld prohibitions on carrying a concealed weapon in public against

22  Second Amendment challenges.  See e.g., *People v. Flores*, 169 Cal.App.4th 568,

23  575-576 (2008); *People v. Yarbrough*, 169 Cal.App.4th 303, 312-314 (2008).  In

24  *People v. Yarbrough*, Yarbrough was convicted of violating California Penal Code §

25  12025(a)(2) for carrying a concealed weapon on residential property that was fully

26  accessible to the public.  Yarbrough challenged his conviction on many grounds,

27  including the Second Amendment.  Noting that *Heller* had "specifically expressed

28  constitutional approval of the accepted statutory proscriptions against carrying

HOA.848047.1

CV 11-06154 SJO (JCx)

-10-

1  concealed weapons," the *Yarbrough* court held:

> 2  we find nothing in Penal Code section 12025, subdivision
> (a), that violates the limited right of the individual
> 3  established in Heller to possess and carry weapons in case
> of confrontation. Section 12025, subdivision (a), does not
> 4  broadly prohibit or even regulate the possession of a gun
> in the home for lawful purposes of confrontation or self-
> 5  defense, as did the law declared constitutionally infirmed
> in *Heller*. Rather, section 12025, subdivision (a), in much
> 6  more limited fashion, specifically defines as unlawful
> carrying concealed within a vehicle or "concealed upon his
> 7  or her person any pistol, revolver, or other firearm capable
> of being concealed upon the person." Further, carrying a
> 8  firearm concealed on the person or in a vehicle in violation
> of section 12025, subdivision (a), is not in the nature of a
> 9  common use of a gun for lawful purposes which the court
> declared to be protected by the Second Amendment in
> 10  *Heller*. (See *People v. Wasley* 245 Cal.App.2d 383, 386
> (1966) .)

11

12  The *Yarbrough* court held that, unlike possession of a gun for protection within a

13  residence, carrying a concealed firearm presents a recognized "threat to public

14  order," and is "prohibited as a means of preventing physical harm to persons other

15  than the offender.' *Id.* at 314, citing *People v. Hale*, 43 Cal.App.3d 353, 356 (1974).

16  A person who carries a concealed firearm on his person or in a vehicle, which

17  permits the individual immediate access to the firearm but impedes others from

18  detecting its presence, poses an 'imminent threat to public safety. *Id.* at 313-314.

19      Similarly, in *People v. Flores*, 169 Cal.App.4th 568 (2008), the court affirmed

20  convictions under California Penal Code sections 12025 and 12031 in the face of a

21  Second Amendment challenge. With regard to the section 12031 conviction, the

22  court reasoned: "there can be no claim that section 12031 in any way precludes the

23  use of handguns held and used for self-defense in the home…[i]nstead, section

24  12031 is narowly tailored to reduce the incidence of unlawful public shootings,

25  while at the same time respecting the need for persons to have access to firearms for

26  lawful purposes, including self-defense. *Id.* at 576; see also *People v. Ellison*, 196

27  Cal.App.4th 1342 (2011) (conviction of carrying concealed firearm did not violate

28  Second Amendment).

1   In *Richards v. County of Yolo*, 2011 U.S. Dist. LEXIS 51906 (on appeal to 9th

2   Cir), plaintiffs challenged Yolo County's good cause policy after they were denied

3   concealed weapons permits. *Id.* at *3-4. In granting the county's motion for

4   summary judgment, the court held that the Second Amendment did not create a

5   fundamental right to carry a concealed weapon in public. *Id.* at *10.

6      **B.**    **California Penal Code Section 12050's Restrictions on Concealed Weapons Do Not Infringe on the Right of Self-Defense in the**

7           **Home.**

8   Penal Code section 12050 does not regulate the possession of a gun in the

9   home for lawful purposes of confrontation or self-defense, as did the law declared

10   unconstitutional in *Heller*. Rather, it involves the licensing of persons in the context

11   of the regulation of carrying concealed weapons in public places. Carrying a

12   firearm concealed on the person or in a vehicle is not in the nature of a common use

13   of a gun for lawful purposes which the court declared to be protected by the Second

14   Amendment in *Heller*. Unlike possession of a gun for protection within a residence,

15   carrying a concealed firearm presents a recognized "threat to public order," and is

16   "'prohibited as a means of preventing physical harm to persons other than the

17   offender.' [Citation.]" *People v. Hale*, 43 Cal.App.3d 353, 356 (1974). A person

18   who carries a concealed firearm on his person or in a vehicle, "which permits him

19   immediate access to the firearm but impedes others from detecting its presence,

20   poses an 'imminent threat to public safety ....' [Citation.]" *People v. Hodges*, 70

21   Cal.App.4th 1348, 1357 (1999).

22   Here, California law does not impede the ability of individuals to defend

23   themselves with firearms in their homes, as set forth in *Heller*. Instead, as the

24   California courts recognize above, there is <u>no</u> right to carry a concealed weapon in

25   public under the Second Amendment. California's regulation of both concealed

26   carry of firearms and carry of loaded firearms in public do not infringe on the

27   Second Amendment. Similarly, the LASD's policies and practices regarding the

28   issuance of CCW permits do not impact any recognized Second Amendment right.

HOA.848047.1

CV 11-06154 SJO (JCx)

1 Because Plaintiff cannot show that he was denied any constitutional right, his civil

2 rights claim fails at the outset, and summary judgment is proper.

3 **II.    THE LASD'S LICENSING PRACTICES WITHSTAND
CONSTITUTIONAL SCRUTINY.**

4

5 Nonetheless, even if this Court finds that the Second Amendment is infringed,

6 the LASD's policies and practices withstand constitutional scrutiny. The majority of

7 courts both before and after *Heller* and *McDonald* have employed an intermediate

8 scrutiny standard when evaluating gun regulations. See *Peruta v. County of San*

9 *Diego*, 758 F.Supp.2d 1106 (on appeal to 9th Circuit) (citing *United States v. Skoien*,

10 614 F.3d 638, 641 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 97

11 (3rd Cir. 2010); *Heller v. District of Columbia* (*Heller* II), 698 F.Supp.2d 179, 188

12 (D.D.C. 2010) (surveying the landscape of post-*Heller* decisions and joining the

13 majority of courts in holding that intermediate scrutiny is the most appropriate

14 standard).  Intermediate scrutiny requires that the challenged statute or regulation

15 "be substantially related to an important governmental objective." *Clark v. Jeter*,

16 486 U.S. 456, 461 (1988).

17 The LASD's policies and practices in limiting concealed carry licensing to

18 individuals with specifically identifiable and documented needs for concealed carry

19 withstand intermediate scrutiny.  Maintaining public safety and preventing crime are

20 clearly important governmental interests. *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

21 475 (1996) (noting that States have "great latitude" to use their police powers);

22 *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("there is no better example of

23 the police power than the suppression of violent crime")  The regulation of

24 concealed firearms is a critical factor in accomplishing these interests. *McDonald,*

25 *supra*, 130 S.Ct. at 3126 ("private gun regulation is the quintessential exercise of a

26 State's police power.")

27 Handguns are unquestionably dangerous and contribute to the majority of

28 criminal cases that result in a person's death.  LASD UF 11-15; see also *Heller*,

HOA.848047.1

*supra*, 554 U.S. at 636 (acknowledging the problem of handgun violence in the U.S.). A 2001 study revealed that a ten percent increase in handgun ownership correlates with a two percent increase in homicides. *See* Michael B. de Leeuw et al., *Beyond the Final Frontier: a "Post-Racial" America?: The Obligations of Lawyers, the Legislature, and The Court: Ready Aim, Fire? District of Columbia v. Heller and Communities of Color*, 25 Harv.BlackLetter J. 133, 149 (Spring 2009). Handgun possession is a particular problem in Los Angeles County due to the influx of gang members in recent years. (See LASD UF 11-15.)

Concealed handguns, in particular pose an obvious threat to the public as a concealed handgun generates no special notice until the weapon is brandished. (LASD UF 11-15.) As more than 90% of police officer killings are caused by guns, high rates of concealed gun carry especially endanger police officers. *Id.* Of the 536 law enforcement officers killed in the line of duty between 2000 and 2009 (including 47 in California), 490 were killed with firearms and of those, handguns were used by the perpetrator 73% of the time. See Fed. Bureau of Investigations, U.S. Dep't of Justice, *Law Enforcement Officers Killed and Assaulted* (2009), tables 1 and 27, *available at* http://www.fbi.gov/about-us/cjis/ucr/leoka/2009/leoka-2009.

In *Peruta*, the Southern District of California found that the San Diego Sheriff had "an important and substantial interest in public safety and in reducing the rate of gun use in crime;" "in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations;" and "in reducing the number of concealed handguns in public because of their disproportionate involvement in life-threatening crimes of violence, particularly in streets and other public places." *Peruta, supra*, 758 F.Supp.2d at 1117. The court also held that the Sheriff's policy which differentiated between "individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not" was reasonably related to the government's important and substantial interest in public safety. *Id.* Accordingly, the court in

1  *Peruta* upheld the San Diego Sheriff's concealed weapon permitting policy.[5]

2  That interest is no different in Los Angeles County. Los Angeles County's

3  practices in limiting CCW licenses to those with specific and documented needs is

4  consistent with the compelling and significant legislative goals underlying Penal

5  Code sections 12025 and 12031: the protection of the public from widespread and

6  unchecked public carry of concealed and loaded firearms. LASD's policy creates a

7  balance between the competing Second Amendment interests in self-defense and

8  public safety. The LASD enables those with a clear and present need for self-

9  defense to obtain a concealed weapon permit, so long as they also meet the

10  requirements enumerated in California Penal Code section 12050. The LASD's

11  policy is reasonably related to the government's important and substantial interest in

12  public safety and concealed weapon control. Therefore, the policy withstands

13  constitutional scrutiny.

14  Maintaining public safety and preventing crime are clearly important (if not

15  paramount) government interests and the regulation of concealed firearms is a

16  critical factor in accomplishing that interest. LASD UF 11-15; See, e.g., *United*

17  *States v. Salerno*, 481 U.S. 739, 750 (1987*); Schall v. Martin*, 467 U.S. 253, 264

18  (1984); *Kelley v. Johnson*, 425 U.S. 238, 247 (1976) ("The promotion of safety of

19  persons and property is unquestionably at the core of the State's police power ...");

20  *People v. Yarbrough, supra*, 169 Cal.App.4th at 312-314. The relevant Penal Code

21  provisions are narrowly tailored and substantially related to furthering public safety

22  and reducing crime. Concealed handguns are the priority of law enforcement

23  everywhere because of the use of the concealed handgun in vast numbers of

24  criminal offenses. (See LASD UF 11-15.) Concealed carry of handguns allows for

25

26  [5] The *Peruta* court stated that it did not need to decide whether the Second
Amendment encompasses a right to carry a loaded handgun in public, because even
27  if it did, San Diego County's restrictions pass constitutional scrutiny.

28

1   stealth and surprise.  Limiting the number of loaded and concealed firearms in

2   public places helps to keep the balance in favor of law enforcement and avoids the

3   necessity for every place that is open to the public – restaurants, malls, theaters,

4   parks, etc.-- to be equipped with metal detectors, fencing and other forms of

5   security, in order to protect patrons from the fear of widespread and unchecked

6   concealed firearms.

7       Numerous courts have discussed the need for firearm regulation and the need

8   for imposing restrictions on their use:

9       …[A]ccidents with loaded guns on public streets or the
    escalation of minor public altercations into gun battles or,

10      as the legislature pointed out, the danger of a police officer
    stopping a car with a loaded weapon on the passenger seat.

11      … [T]hus, otherwise "innocent" motivations may
    transform into culpable conduct because of the

12      accessibility of weapons as an outlet for subsequently
    kindled aggression. … [T]he underlying activity of

13      possessing or transporting an accessible and loaded
    weapon is itself dangerous and undesirable, regardless of

14      the intent of the bearer since it may lead to the
    endangerment of public safety. … [A]ccess to a loaded

15      weapon on a public street creates a volatile situation
    vulnerable to spontaneous lethal aggression in the event of

16      road rage or any other disagreement or dispute. The
    prevention of the potential metamorphosis of such

17      "innocent" behavior into criminal conduct is rationally
    related to the purpose of the statute, which is to enhance

18      public safety. Because the legislature has a compelling
    interest in preventing the possession of guns in public

19      under any such circumstances, the statute is reasonably
    related to the legislature's purpose of "mak[ing]

20      communities in this state safer and more secure for their
    inhabitants."

21

22  *People v. Marin*, 795 N.E.2d 953, 958–59 (Ill. App. 2003) (citations omitted); see

23  also *Marshall v. Walker*, 958 F.Supp. 359, 365 (N.D. Ill. 1997) (individuals should

24  be able to walk in public "without apprehension of or danger from violence which

25  develops from unauthorized carrying of firearms and the policy of the statute to

26  conserve and maintain public peace on sidewalks and streets within the cities ...")

27  (quoting *People v. West*, 422 N.E.2d 943, 945 (Ill.App. 1981)).

28      For these reasons, the LASD's policies would withstand any level of

1   constitutional scrutiny.  Strict scrutiny requires that a statute or regulation "be

2   narrowly tailored to serve a compelling governmental interest" in order to survive a

3   constitutional challenge. *Abrams v. Johnson*, 521 U.S. 74, 91 (1997).  Finally, a

4   statute or regulation survives an "undue burden" analysis where it does not have the

5   "'purpose or effect [of] plac[ing] a substantial obstacle in the path'" of the

6   individual seeking to engage in constitutionally protected conduct. *Gonzales v.*

7   *Carhart*, 550 U.S. 124, 146 (2007) (quoting *Planned Parenthood of Southeastern*

8   *Penn. v. Casey*, 505 U.S. 833, 878 (1992)).  The LASD's policy to limit CCW

9   licenses to those with specific and documented needs is consistent with the

10  compelling and significant legislative goals underlying sections 12025 and 12031,

11  i.e. the protection of the general public from widespread and unchecked public carry

12  of concealed and loaded firearms.  There is a "compelling state interest in protecting

13  the public from the hazards involved with certain types of weapons, such as guns."

14  *State v. Cole*, 665 N.W.2d 328, 344 (2003).

15  **III.   THE LASD DID NOT IMPROPERLY DENY PLAINTIFF'S**
        **APPLICATION.**
16

17       LASD's policy was also constitutionally applied to Plaintiff.  Plaintiff's

18  application was reviewed like every other application and underwent the same

19  evaluation every other application did.  (LASD UF 8, 17-19.)  Plaintiff's application

20  was denied because he did not present evidence of a clear and present danger, as

21  required by the policy.  (LASD UF 8, 17-19.)  As such, summary judgment is

22  appropriate.

23       //

24       //

25       //

26       //

27       //

28       //

1

2 **CONCLUSION**

3       For the foregoing reasons, the LASD asks that the Court grant its Motion, and

4 denies Plaintiff's Motion for Summary Judgment.

5

6 DATED: December 22, 2011                Respectfully submitted,

7                                         ANDREA SHERIDAN ORDIN
                                          County Counsel
8

9

10                                        By _____

11                                           JENNIFER A.D. LEHMAN
                                             Principal Deputy County Counsel
12

13                                        Attorneys for Defendant
                                          LOS ANGELES COUNTY SHERIFF'S
14                                        DEPARTMENT

15

16

17

18

19

20

21

22

23

24

25

26

27

28