1 | TORRANCE CITY ATTORNEY'S OFFICE
John L. Fellows III (State Bar No. 103968)
2 | City Attorney
jfellows@TorranceCA.gov
3 | Della Thompson-Bell (State Bar No. 224846)
Deputy City Attorney
4 | dthompsonbell@TorranceCA.Gov
3031 Torrance Boulevard
5 | Torrance, CA 90503
Telephone: 310-618-5810
6 | Facsimile: 310-618-5813

7 | RUTAN & TUCKER, LLP
Robert S. Bower (State Bar No. 70234)
8 | rbower@rutan.com
Ajit S. Thind (State Bar No. 268018)
9 | athind@rutan.com
611 Anton Boulevard, Fourteenth Floor
10 | Costa Mesa, California 92626-1931
Telephone: 714-641-5100
11 | Facsimile: 714-546-9035

12 | Attorneys for Defendant
TORRANCE POLICE DEPARTMENT
13

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16 ROBERT THOMSON, | Case No. CV11-06154 SJO (JCx) |
| 17 Plaintiff, | Date Action Filed: July 26, 2011 |
| 18 vs. | Assigned to: U.S. District Judge S. James Otero |
| 19 TORRANCE POLICE DEPARTMENT and THE LOS ANGELES COUNTY | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 20 SHERIFFS DEPARTMENT, | **DEFENDANT TORRANCE POLICE DEPARTMENT'S MOTION FOR** |
| 21 Defendants. | **SUMMARY JUDGMENT (FRCP 56)** |
| 22 | [Filed Concurrently With Defendant's Notice of Motion and Motion for |
| 23 | Summary Judgment; Notice of Lodging; Declaration of John Neu; Declaration of |
| 24 | Ajit Singh Thind] |
| 25 | Date: February 27, 2012 Time: 10:00 a.m. |
| 26 | Courtroom: 1-2nd Floor Location: Spring Street |
| 27 | |
| 28 | |

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1

# TABLE OF CONTENTS

2
**Page**

3  I.      INTRODUCTION ............................................................................................. 1

4  II.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT
         MOTIONS ...................................................................................................... 2

5  III.    THE STATUTORY SCHEME GOVERNING FIREARMS.......................... 2

6
7          A.     Statutory Scheme At Time Of Denial Of Plaintiff's
                Application .......................................................................................... 2

8          B.     Statutory Scheme As Of January 1, 2012............................................. 4

9  IV.     STATEMENT OF FACTS .............................................................................. 5

10         A.     The City's Good Cause Policy ............................................................. 5

11         B.     The Administrative Record .................................................................. 7

12  V.     ARGUMENT ................................................................................................... 9

13         A.     The Second Amendment Does Not Create A Fundamental
                Right To Carry A Concealed Handgun In Public ................................ 9

14
15         B.     TPD's Policy Did Not Burden Plaintiff's Second
                Amendment Rights And Thus Rational Basis Review
                Would Apply ...................................................................................... 15

16
17         C.     TPD's Policy Passes Constitutional Muster Even Under
                Heightened Scrutiny .......................................................................... 17

18         D.     There Is No Cause Of Action Under Section 1983 For A
                Violation Of A State Statute............................................................... 19

19  VI.    CONCLUSION.............................................................................................. 20

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                                -i-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES

2

Page(s)

3 **FEDERAL CASES**

4 American Mfrs. Mutual Ins. Co. v. Sullivan (1999)
5    526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 .................................................... 19

6 Celotex Corp. v. Catrett (1986)
7    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 ......................................................2

8 Clark v, Jeter (1988)
9    486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 ................................................ 17

10 Clark v. Link (4th Cir. 1988)
   855 F.2d 156 ........................................................................................................ 20

11

12 Delbon Radiology v. Turlock Diagnostic Center (E.D. Cal. 1993)
   839 F.Supp. 1388, 1391 ..........................................................................................2

13 District of Columbia v. Heller (2008)
14    554 U.S. 570, 128 S.Ct. 2783, 1171 L.Ed.2d 637 ........... 9, 10, 11, 12, 13, 14, 18

15 Dorr v. Weber (N.D. Iowa)
16    741 F. Supp.2d 993 ............................................................................................. 13

17 Edwards v. Aguillard (1987)
18    482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 ......................................................2

19 El v. Crain (C.D. Cal. 2008)
20    560 F.Supp.2d 932 ................................................................................................2

21 Erdelyi v. O'Brien (9th Cir. 1982)
   680 F.2d 61 ............................................................................................................4

22

23 Kachalsky v. Cacace (S.D. N.Y. 2011)
   2011 U.S. Dist. LEXIS 99837 .................................................. 11, 12, 13, 17, 18

24 Martinkovich v. Oregon Legislative Body (D. C. Ore. 2011)
25    2011 U.S. Dist. LEXIS 117277 .......................................................................... 13

26 McCall v. Andrus (9th Cir. 1980)
27    628 F.2d 1185 ........................................................................................................2

28

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-ii-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

**Page(s)**

**FEDERAL CASES (CONT.)**

McDonald v. City of Chicago (2010)
130 S.Ct. 3020, 177 L.Ed.2d 894........................................................................ 10

Moore v. Marketplace Restaurant, Inc.,
754 F.2d 1336 (7th Cir. 1985) ........................................................................... 20

Peruta v. San Diego County (S.D. Cal. 2010)
758 F.Supp.2d 1106 ........................................................................... 4, 18, 19, 20

Richards v. County of Yolo,
2011 U.S. Dist. LEXIS 51906 .............................................................. 12, 15, 16

Robertson v. Baldwin (1897)
165 U.S. 275, 17 S.Ct. 326, 41 L. Ed. 715 .................................................. 11, 13

U.S. v. Chester, Jr. (4th Cir. 2010)
628 F.3d 673 ..................................................................................................... 11

Union Pacific Land Resources Corp. v. Moench Inv. Co. (10th Cir. 1982)
696 F.2d 88 .........................................................................................................2

United States v. Hart (D. Mass. 2010)
726 F.Supp.2d 56 .............................................................................................. 13

United States v. Marzzarella (3d Cir. 2010)
614 F.3d 85 ................................................................................................. 11, 17

United States v. Vongxay (9th Cir. 2010)
594 F.3d 1111 ............................................................................................. 11, 12

**STATE CASES**

CBS Inc. v. Block (1986)
42 Cal.3d 646 .....................................................................................................4

Gamble v. United States (D.C. 2011)
30 A.3d 161 ....................................................................................................... 13

Kansas v. Knight (2009)
44 Kan.App.2d 666, 241 P.3d 120................................................................. 9, 14

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-iii-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

**Page(s)**

**STATE CASES (CONT.)**

Nichols v. County of Santa Clara (1990)
223 Cal.App.3d 1236, 273 Cal.Rptr. 84 ................................................................4

People v. Flores (2008)
169 Cal.App.4th 568, 86 Cal.Rptr. 3d 804 ........................................................ 14

People v. Yarbrough (2008)
169 Cal.App.4th 303, 86 Cal.Rptr.3d 674 ........................................................ 14

San Jose Police Officers Assn. v. City of San Jose (1988)
199 Cal.App.3d 1471, 245 Cal.Rptr. 728 ............................................................9

Sims v. U.S. (D.C. 2008)
963 A.2d 147, 150............................................................................................ 13

State v. Chandler (1850)
5 La. Ann. 489, 1850 La. LEXIS 226.................................................................. 11

Williams v. State of Maryland (2011)
417 Md. 479, 10 A.3d ...................................................................................... 14


**FEDERAL STATUTES**

42 U.S.C.
section 1983 .................................................................................... 1, 16, 19, 20


**STATE STATUTES**

California Penal Code
section 12025 ............................................................................. 2, 3, 4, 14, 18
section 12025(a)................................................................................... 2, 14
section 12026 ...........................................................................................4
section 12026(a)................................................................................... 2, 16
section 12026(b)................................................................................... 2, 16
section 12026.1(a)(1) ............................................................................... 16
section 12027(j)...........................................................................................3
section 12031 .................................................................................. 3, 4, 15, 18

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337 9 a01/03/12                    -iv-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1

**Page(s)**

2   **STATE STATUTES (CONT.)**

3   California Penal Code (Cont.)

4       section 12031(a)(1) ........................................................................................3
        section 12031(g)..............................................................................................3

5       section 12031(h).......................................................................................... 3, 4

6       section 12031(j)(1).................................................................................. 3, 4, 16
        section 12031(k)....................................................................................... 3, 4, 16

7       section 12031(l).............................................................................................4

8       section 12050 ....................................................... 1, 3, 4, 12, 16, 18, 19, 20
        section 12050(a)(1)(A)-(B) ..............................................................................3

9       section 16000 ................................................................................................2

10      section 16005 ................................................................................................4

        section 25850 ................................................................................................5
11      section 26045 ................................................................................................5

12      section 26045(a)............................................................................................5

        section 26350 ............................................................................................ 4, 5
13      section 26362 ................................................................................................5

14      section 26389 ................................................................................................5

15

16   **RULES**

17
     Federal Rules of Civil Procedure
18      rule 56(a) .....................................................................................................2

19

20   **CONSTITUTIONAL PROVISIONS**

21
     United States  Constitution
22      Second Amendment ................................ 1, 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law        102/062579-0097
                        2622337.9 a01/03/12        -v-        Case No. CV11-06154 SJO (JCx)
                                                             MEMO OF P'S AND A'S IN SUPPORT OF
                                                             MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Robert Thomson is a licensed California Bail Agent who resides in the City of Torrance ("City"). In April 2011, the City's Chief of Police denied Plaintiff's application for a concealed carry weapon ("CCW") license, which would have allowed Plaintiff to carry a loaded handgun in public concealed on his person or in his car. Based on that denial, Plaintiff has sued Defendant Torrance Police Department ("TPD") under 42 U.S.C. section 1983 ("Section 1983"), alleging a purported violation of the Second Amendment.

The gravamen of this action is that: (i) Plaintiff believes he needs to carry a concealed, loaded handgun for self-defense while performing his job; (ii) Plaintiff cannot legally carry a concealed handgun unless he obtains a CCW license from the TPD pursuant to California Penal Code section 12050, which requires a showing of "good cause" for the license; (iii) the TPD determined Plaintiff did not have "good cause" because he demonstrated only a generalized fear for his safety, rather than a clear, present, and documented danger; and (iv) the TPD's interpretation of section 12050's "good cause" requirement purportedly violated the Second Amendment. Plaintiff does not dispute that he lacked good cause under the TPD Policy's definition of "good cause." Rather, he asserts the Policy's definition of the term is too restrictive under the Second Amendment. Essentially, Plaintiff claims that an applicant's subjective belief that he needs to carry a concealed handgun for self-defense is constitutionally-sufficient "good cause" for the issuance of a CCW license. Plaintiff's claim suffers from two fatal flaws.

First, there is no Second Amendment right to carry a concealed handgun in public. Thus, because the TPD's denial of the CCW license did not deprive Plaintiff of a constitutional right, he fails to state a claim for relief under Section 1983.

Second, even if (i) the Second Amendment could be plausibly read to protect a right to a CCW license, and (ii) it is assumed that the TPD's Policy burdens the protected conduct, the Policy passes constitutional muster because it is substantially

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-1-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 related to important government interests.

2 **II.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS**

3 A party may move for summary judgment if there is no genuine dispute as to
4 any material fact, and it is entitled to judgment as a matter of law. (FRCP 56(a).) A
5 party need not disprove plaintiff's claims; it need only identify those issues on
6 which plaintiff cannot meet its burden of proof at trial. (Celotex Corp. v. Catrett
7 (1986) 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265; El v. Crain (C.D.
8 Cal. 2008) 560 F.Supp.2d 932, 936.)

9 When the facts controlling the application of a rule of law are undisputed, as
10 they are here, the application raises a question of law for the Court, and summary
11 judgment is appropriate. (Delbon Radiology v. Turlock Diagnostic Center (E.D.
12 Cal. 1993) 839 F.Supp. 1388, 1391.) Summary judgment is particularly appropriate
13 when, as here:  (i) the question of law involves the interpretation of a statute
14 (Edwards v. Aguillard (1987) 482 U.S. 578, 594-595, 107 S.Ct. 2573, 96 L.Ed.2d
15 510; Union Pacific Land Resources Corp. v. Moench Inv. Co. (10th Cir. 1982) 696
16 F.2d 88, 93, n. 5); and (ii) the court is reviewing an administrative action. (McCall
17 v. Andrus (9th Cir. 1980) 628 F.2d 1185, 1189-1190).

18 **III.    THE STATUTORY SCHEME GOVERNING FIREARMS**

19 **A.    Statutory Scheme At Time Of Denial Of Plaintiff's Application**

20 Under California Penal Code section 12025, a person may not legally carry a
21 **concealed** weapon (loaded or unloaded) on his person or in a vehicle.
22 (§ 12025(a).)[1]  However, the prohibitions of section 12025 do not apply to, among
23 other things firearms carried by an adult, concealed or exposed, while in his
24 residence, place of business, or while on private property.  (§ 12026(a).)

25

26 [1] The statutes cited herein were in effect in 2011 when the TPD denied Plaintiff's
CCW application. The statutes were recodified effective January 1, 2012. (Cal.
27 Penal Code § 16000.) Although only the 2011 statutes are relevant to the TPD's
denial, the Table attached as Exhibit A to the Declaration of Ajit Singh Thind sets
28 forth the 2011 provisions and the corresponding new provisions that will be
effective on January 1, 2012, for the Court's convenience.

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                                    -2-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1       Under California Penal Code section 12031, a person may not legally carry a
2 **loaded** weapon (concealed or unconcealed) on his person or in a vehicle while in a
3 public place. (§ 12031(a)(1).) There are several exceptions to this prohibition,
4 however. For example, section 12031 allows a person to:

5      (i)    keep a loaded firearm in his residence, place of business, or on private
6 property (§ 12031(l), (h));

7      (ii)   open carry a loaded firearm while engaged in the act of making or
8 attempting to make a lawful arrest (§ 12031(k));

9      (iii)  open carry a loaded firearm if the person "reasonably believes that the
10 person or property of himself or herself or of another is in immediate, grave danger
11 and that the carrying of the weapon is necessary for the preservation of that person
12 or property;" i.e., a person may carry a loaded weapon when facing a situation
13 where he needs to act in self-defense "in the brief interval before and after the local
14 law enforcement agency has been notified of the danger and before the arrival of its
15 assistance" (§ 12031(j)(1)); and

16      (iv)  open carry an unloaded firearm (§ 12031(g)).

17       Yet another exception is that the prohibitions of sections 12025 and 12031 do
18 not apply to any person licensed to carry a concealed firearm pursuant to California
19 Penal Code section 12050 ("Section 12050"). (§§ 12027(j), 12031(b)(6).)
20 Section 12050 provides that a county sheriff or head of a municipal law enforcement
21 agency "may issue" a license to carry a concealed firearm upon proof that:

22       • the person is of good moral character;

23       • the person has completed a course of firearm training;

24       • the person is a resident of the issuing agency; and

25       • **good cause** exists for the issuance.

26 (§ 12050(a)(1)(A)-(B).)

27       The language of Section 12050 is permissive in nature, and the sheriff or
28 police chief has extremely broad discretion in deciding whether to grant a CCW

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-3-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 license. (Erdelyi v. O'Brien (9th Cir. 1982) 680 F.2d 61, 63 [statute explicitly
2 grants discretion to officer issuing CCW license]; Nichols v. County of Santa Clara
3 (1990) 223 Cal.App.3d 1236, 1241, 273 Cal.Rptr. 84.)

4     Thus, after denial of his application in April 2011, Plaintiff could not carry a
5 concealed weapon, but he had four other means of legally carrying a handgun for
6 self-defense. He could:

7     1.    carry a loaded weapon at his place of business and in his home, open or
8 concealed (§ 12026, 12031(h), (l));

9     2.    open carry a loaded weapon while making a lawful arrest (§ 12031(k));
10     3.    open carry a loaded weapon if he believed he was in immediate, grave
11 danger and the firearm was needed for his self-defense (§ 12031(j)(1); Peruta v. San
12 Diego County (S.D. Cal. 2010) 758 F.Supp.2d 1106, 1114-1115 ["to the extent that
13 Penal Code sections 12025 and 12050 and Defendant's [good cause] policy burden
14 conduct falling within the scope of the Second Amendment, if at all, the burden is
15 mitigated by the provisions of section 12031 that expressly permit loaded open carry
16 for immediate self-defense"]); and

17     4.    open carry an unloaded firearm and ammunition ready for instant
18 loading (Peruta, 758 F.Supp.2d at 1114 [citing Cal. Pen. Code § 12031(g)]).

19     **B.    Statutory Scheme As Of January 1, 2012**

20     Although the statutes cited herein were recodified effective January 1, 2012,
21 the recodification was **not** intended "to substantively change the law relating to
22 deadly weapons. The act is intended to be entirely nonsubstantive in effect." (Cal.
23 Pen. Code § 16005; see Table [Ex. A to Thind Decl.] setting forth corresponding
24 new provisions.)

25     Plaintiff makes much of the fact that in October 2011, well after the TPD
26 denied Plaintiff's application, the Governor signed AB 144, which will change
27 existing law to make it unlawful to openly carry an unloaded handgun. (Cal. Pen.
28 Code § 26350.) Plaintiff claims section 26350 will deprive him of alternative ways

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-4-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 to defend himself. However, because section 26350 was not adopted until well after
2 the April 2011 decision, it is irrelevant to that decision.

3     Even if section 26350 were considered, however, it avails Plaintiff nothing, as
4 the new legislation changes very little with regard to the alternative means of self-
5 defense that existed when the TPD made its decision. First, section 26350 concerns
6 only alternative 4 above (i.e., it prohibits the open carry of an unloaded handgun). It
7 does *not* prohibit alternatives 1 - 3 (the open carry of a loaded weapon at home or
8 place of business; while making an arrest; or if in immediate danger). Nor does
9 section 26350 apply to the carrying of an unloaded handgun if it is carried in the
10 locked trunk of a vehicle or "in a locked container." (Cal. Pen. Code § 26389.)

11     Second, even with regard to alternative 4, the new legislation expressly
12 provides that section 26350's prohibitions against open carry do **not** apply to "the
13 open carrying of an unloaded handgun by any person to the extent that person may
14 openly carry a loaded handgun pursuant to Article 4 (commencing with
15 Section 26000) of Chapter 3." (Cal. Pen. Code § 26362.) In turn, Article 4 includes
16 section 26045, which states that the prohibitions against the open carrying of loaded
17 firearms (Cal. Pen. Code § 25850) do **not** apply to persons who believe they are in
18 immediate, grave danger, and the firearm is needed for their self-defense. (Cal. Pen.
19 Code § 26045(a).) Thus, beginning in 2012, the open carrying of handguns, loaded
20 or unloaded, will still be permitted for self-defense purposes, along with dozens of
21 other legitimate exceptions.

22 **IV.**   **STATEMENT OF FACTS**

23     **A.**   **The City's Good Cause Policy**

24     The City's CCW Policy reads as follows:

25         **"CITY OF TORRANCE – GOOD CAUSE POLICY FOR CCW**

26                     **LICENSES**

27                     "GOALS

28     "Torrance has instituted a **good cause policy** for the issuance of CCW

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-5-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1  licenses pursuant to California Penal Code section 12050.  The goals of

2  this good cause policy in regulating concealed firearms are **to maintain**

3  **public safety, prevent gun-related crime and the death of its**

4  **citizens, reduce the incidence of unlawful public shootings, reduce**

5  **the number of concealed weapons in public in order to reduce the**

6  **risks to other members of the public who use the streets and go to**

7  **public accommodations, and ensure that police officers can safely**

8  **respond to dangerous situations**.

9                              "POLICY

10  "The Police Department shall conduct an **individualized assessment of**

11  **each applicant** for a CCW license, including a review of the

12  standardized DOJ application, a background check, and an interview of

13  the applicant.  The Chief of Police shall issue a CCW license when, in

14  his sole discretion, he determines there is good cause to do so and the

15  applicant has met all of the other conditions set forth in California

16  Penal Code section 12050.  **To establish good cause, an applicant**

17  **must demonstrate more than a "generalized fear" for one's**

18  **personal safety**.  Rather, the applicant must document that:

19        (i) the applicant is dealing with circumstances that **distinguish**

20  **the applicant from other members of the public**, in that there is a

21  **clear, present, and documented danger** to the applicant, **and**

22        (ii) there are **no feasible alternative means of protection**, either

23  through **existing law enforcement resources or** under the provisions

24  of California Penal Code section 12031, which carve out **a number of**

25  **exceptions that allow individuals to possess and carry firearms in**

26  **public settings for self-defense** and defense of property.

27                            "EXAMPLES

28  "Examples of good cause include where the applicant is a business

Rutan & Tucker, LLP
attorneys at law
102/062579-0097
2622337.9 a01/03/12
-6-
Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1     owner who typically is **forced to carry** large sums of cash or valuable

2     items in public **and has been the victim of violent crime and/or the**

3     **subject of documented, credible threats of violence**. Good cause

4     would not include situations where the applicant voluntarily chooses to

5     undertake risks in the performance of the applicant's job that could

6     otherwise be avoided by performing the job in a different manner (*e.g.*,

7     avoiding risks by meeting clients in public places during the day, rather

8     than late at night in crime-ridden areas)."

9 (Statement of Undisputed Fact ("SUF"), ¶ 1, Ex. A (bolding added).)

10     **B.   The Administrative Record**

11     The administrative record herein establishes the following:

12     Plaintiff first applied to the TPD for a CCW license on December 19, 2008.

13 (SUF, ¶ 2, Ex. B.) In that application, Plaintiff claimed to be a licensed California

14 Bail Agent residing in the City of Torrance. Due to his job, Plaintiff claimed to

15 sometimes have over $10,000 in cash in his possession late at night in high crime

16 areas. Plaintiff also claimed to have passed multiple criminal background checks,

17 and "as required by his license (P.C. 1299) completed a course on powers of arrest

18 provided by the Bureau of Security and Investigative Services." In his "good cause"

19 statement, Plaintiff recounted that (i) on one occasion, while meeting a client's

20 family, a man answered the door holding a firearm, and (ii) on another occasion, he

21 needed the assistance of the Los Angeles Sheriff's Norwalk Station to help him

22 arrest a subject who had a bail warrant. In neither incident was Plaintiff assaulted,

23 and he did not file a police report in either incident. (SUF, ¶ 3, Ex. B, pp. 9-11, 26,

24 28, 29.) Plaintiff's application was denied on April 1, 2009, based on his failure to

25 demonstrate good cause for the license. (SUF, ¶¶ 3, 4, Ex. B, pp.8-11.) Plaintiff

26 never filed a legal challenge to that denial, and the statute of limitations has now run

27 on doing so.

28     Plaintiff submitted his second CCW license application to the City on

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-7-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1   December 19, 2010, which is the application at issue in these proceedings.  (SUF,

2   ¶ 5, Ex. C.)  In this second application, Plaintiff recounted only one incident in

3   addition to the grounds he had set forth in his first application as justification for a

4   license.  That new incident actually did not involve Plaintiff's job - rather, it

5   involved his wife's, who works in real estate.  While assisting her in changing the

6   lock at a unit in a residential complex located in the City of Los Angeles, Plaintiff

7   was allegedly confronted by the former tenants of the unit and some other tenants

8   who threatened Plaintiff with physical harm and threw household items at him.

9   Plaintiff contacted the LAPD, and the change of lock was thereafter completed

10  without incident.  (SUF, ¶ 6, Ex. C, pp 56, 73.)  After thorough investigation,

11  Plaintiff's second application was denied on April 5, 2011, again based on

12  Plaintiff's failure to demonstrate good cause for its issuance.  (SUF, ¶ 7, Ex. C,

13  pp. 53, 57.)

14      Significantly, in both of his applications, Plaintiff admitted that:

15      • he had never been threatened within the jurisdiction of the TPD;

16      • he had no security concerns within the jurisdiction of the TPD;

17      • he had never been physically assaulted or robbed during the course of

18          his employment in any jurisdiction;

19      • he had never had to file a report with any police agency regarding

20          threats made against him or his family;

21      • he evaluates every bail bond with safety in mind, and if he believes

22          there is any type of risk, he refuses to take the case; and

23      • his concerns were with the "unforeseen" and "what ifs" that went along

24          with his job.  (SUF, ¶ 8, Ex. B, pp. 10-11, 29, Ex. C, pp. 56-57, 73.)

25      Thus, Plaintiff's application for a CCW license was denied because Plaintiff

26  was not subject to any specific, credible threats; there was no showing that local law

27  enforcement resources were insufficient to deal with any threats that might arise;

28

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                                    -8-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 and Plaintiff had viable alternative means of self-defense available.[2] (SUF, ¶ 7.)

2 **V.    ARGUMENT**

3        **A.    The Second Amendment Does Not Create A Fundamental Right To**

4              **Carry A Concealed Handgun In Public**

5        The Second Amendment provides, "A well regulated Militia, being necessary

6 to the security of a free State, the right of the people to keep and bear Arms, shall

7 not be infringed." (U.S. Const. Amend. II.) Contrary to Plaintiff's argument that

8 the Second Amendment secures his right to carry a loaded concealed handgun, not a

9 single modern case has held that citizens have a right to carry concealed weapons.

10       Since the early 1800s, the courts have repeatedly upheld concealed carry

11 regulations. Indeed, in the United States Supreme Court's seminal decision of

12 District of Columbia v. Heller (2008) 554 U.S. 570, 626-27, 128 S.Ct. 2783, 2816-

13 2817, 1171 L.Ed.2d 637 ("Heller"), the Court found that the longstanding

14 recognition of the validity of concealed weapons laws was presumptively lawful.[3]

15 (128 S.Ct. at 2816-2817, n.26.) Moreover, CCW regulations have been upheld by

16

17 ____
[2] The record supports the finding that Plaintiff did not demonstrate a clear and present danger to him or his family, or that law enforcement resources could not
18 handle any threats that might be made. At most, Plaintiff simply asserted that in his chosen line of work, and because of the manner in which he chooses to perform it,
19 he faces "nothing more than the ordinary personal dangers of urban life." (San Jose Police Officers Assn. v. City of San Jose (1988) 199 Cal.App.3d 1471, 1480, 245
20 Cal.Rptr. 728 [superseded in part by statute].) Thus, Plaintiff failed to establish good cause. In any event, Plaintiff's applications are essentially irrelevant because
21 Plaintiff does not challenge the determination that he lacked "good cause," but merely asserts that his subjective belief that he needs to carry a concealed handgun
22 for self-defense is constitutionally-sufficient "good cause" for the issuance of a CCW license. Thus, the central issue in this case is a matter of constitutional
23 interpretation.
[3] Although the Heller Court did not expressly mention prohibitions on concealed
24 firearms in its list of regulations that were presumptively lawful, the Court's list was not exhaustive -- it only served to identify examples. (128 S.Ct. at 2817, n. 26.)
25 Moreover, the Court (i) specifically mentioned prohibitions on concealed firearms in the sentence before its list of presumptively lawful prohibitions, and (ii) began the
26 paragraph by stating that "the right secured by the Second Amendment is not unlimited" and, two sentences later, noted prohibitions on carrying concealed
27 firearms as an example. (Id. at 2816-2817.) "This clearly shows that the Heller Court considered concealed firearms prohibitions to be presumptively constitutional
28 under the Second Amendment." (Kansas v. Knight (2009) 44 Kan.App.2d 666, 685-686, 241 P.3d 120.)

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                    -9-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 state and federal courts throughout the country since the Court's decision in Heller.
2 Thus, Plaintiff is seeking protection for an activity **that is not within the scope of**
3 **the Second Amendment, and never has been**. To hold that Plaintiff has a
4 constitutional right to carry a loaded concealed handgun in public would be an
5 unprecedented extension of Second Amendment law.

6      In Heller, the Supreme Court struck down as a violation of the Second
7 Amendment certain statutes which totally banned the possession of handguns and
8 required any other lawful firearms in the home to be kept inoperable. The Court
9 concluded that the core purpose of the right conferred by the Second Amendment
10 was an individual right, as opposed to a collective protection of state militias, and it
11 allowed "law-abiding, responsible citizens to use arms **in defense of hearth and**
12 **home**" (128 S.Ct. at 2821 (emph. added)), "where the need for defense of self,
13 family, and property is most acute" (id. at 2817).

14      The right to use arms in the defense of one's home, however, does not
15 provide any precedent pertaining to the public carry of concealed weapons. The
16 Heller Court emphasized that the right to keep and bear arms is not unlimited, and is
17 "not a right to keep and carry any weapon whatsoever in any manner whatsoever
18 and for any purpose." (128 S.Ct. at 2816.) After noting that most 19th-century
19 courts upheld prohibitions on carrying concealed weapons, the Court also
20 emphasized that its opinion should not cast doubt on "longstanding prohibitions on
21 the possession of firearms" by certain classes of persons, such as the mentally ill and
22 convicted felons, and in certain places constituting security concerns. (Id. at 2816-
23 2817 & n.26 ["[w]e identify **these presumptively lawful** regulatory measures only
24 as examples; our list does not purport to be exhaustive"] (emph. added).) (See also
25 McDonald v. City of Chicago (2010) 130 S.Ct. 3020, 3050, 177 L.Ed.2d 894 [in
26 holding that the Second Amendment applies to state and local governments, the
27 Court reiterated that the right to bear arms is not without restrictions].)

28      The process by which the Heller Court reached its decision provides guidance

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-10-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1  on evaluating the CCW challenge here. <u>Heller</u> held that challenged conduct violates
2  the protections of the Second Amendment only if the rights impacted were
3  understood to be within the scope of the Second Amendment guarantee at the time
4  of its ratification in 1791. For example, the Court interpreted the word "arms" in
5  specific reference to its "18th-century meaning" as defined in the 1773 edition of
6  Samuel Johnson's dictionary. ( 128 S.Ct. at 2791.) Likewise, the Court relied on
7  the 1769 edition of Blackstone's <u>Commentaries on the Laws of England</u> and 17th
8  century English statutes to define the phrase "keep and bear arms." (<u>Id.</u> at 2792.)

9    Thus, the first question in evaluating a challenged regulation is whether the
10 burdened conduct was understood to be within the scope of the Second Amendment
11 guarantee at the time of ratification. (<u>U.S. v. Chester, Jr.</u> (4th Cir. 2010) 628 F.3d
12 673, 680; <u>United States v. Marzzarella</u> (3d Cir. 2010) 614 F.3d 85, 89.) If it was
13 not, **the inquiry is complete**. (<u>Marzzarella,</u> 614 F.3d at 89; <u>Kachalsky v. Cacace</u>
14 (S.D. N.Y. 2011) 2011 U.S. Dist. LEXIS 99837, \*65.)

15   Significant to this issue, the Court noted that "the majority of the 19th-century
16 courts to consider the question held that **prohibitions on carrying concealed**
17 **weapons were lawful under the Second Amendment or state analogues**." (128
18 S.Ct. at 2816 (cit. omitted, emph. added); <u>see, e.g.,</u> <u>Robertson v. Baldwin</u> (1897)
19 165 U.S. 275, 281-282, 17 S.Ct. 326, 41 L. Ed. 715 [where the Supreme Court itself
20 held that "the right of the people to keep and bear arms . . . is not infringed by laws
21 prohibiting the carrying of concealed weapons"]; <u>State v. Chandler</u> (1850) 5 La.
22 Ann. 489, 490, 1850 La. LEXIS 226 [right to keep and bear arms does not extend to
23 the carrying of concealed weapons].) Thus, because the right to carry a concealed
24 weapon was **not** understood to be within the scope of the Second Amendment
25 guarantee at the time of ratification, the inquiry is complete, and no claim is stated.

26   The cases decided since <u>Heller</u> was handed down have invariably held that
27 carrying a concealed weapon is not a right protected by the Second Amendment.
28 For example, in <u>United States v. Vongxay</u> (9th Cir. 2010) 594 F.3d 1111 (cert.

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-11-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 denied), the Ninth Circuit explained that the scope of Heller was limited to the right
2 to register and keep a loaded firearm **in the home** for self-defense:

3    "[The *Heller* Court's] specific holding . . . was that D.C.'s 'ban on
4    handgun possession **in the home** violates the Second Amendment, as
5    does its prohibition against rendering any lawful firearm **in the home**
6    operable for the purpose of immediate self-defense.' *Heller*, 128 S.Ct.
7    at 2821-22."

8 (594 F.3d 1111 at 1115 (emphasis added).)

9    Similarly, in the recent case of Richards v. County of Yolo (E.D. Cal. 2011)
10 2011 U.S. Dist. LEXIS 51906, plaintiffs sued when they were denied CCW licenses
11 under section 12050, asserting, as Plaintiff does here, that the county's interpretation
12 of good cause infringed on their Second Amendment rights. (Id. at *3, 4.) After
13 reviewing Heller, the court held that the Second Amendment "does not create a
14 fundamental right to carry a concealed weapon in public." (Id. at *10.) The court
15 noted that the county's policy, like the TPD's Policy in the case at bar, did not
16 "create a total ban on carrying a firearm, such that the policy completely infringes
17 on the rights protected by the Second Amendment." (Id.)

18    In Kachalsky v. Cacace (S.D. N.Y. 2011) 2011 U.S. Dist. LEXIS 99837, the
19 court comprehensively analyzed Heller in circumstances strikingly similar to those
20 in the case at bar, and thus it is particularly persuasive. There, the plaintiffs
21 included a person asserting a need to defend himself against sporadic random
22 violence (much like Plaintiff here) and a transgender individual claiming to be
23 subject to a higher likelihood of being the victim of violence. Plaintiffs asserted
24 they needed CCW permits for self-defense purposes. (Id. at *11-17.) Under the
25 statutory scheme, applicants for a CCW permit had to show "proper cause," defined
26 as a need for self protection distinguishable from that of the general public. (Id. at
27 *33, 43.) When their applications were denied, plaintiffs sued, claiming the "proper
28 cause" requirement violated the Second Amendment. (Id. at *20.)

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                    -12-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1    On cross-motions for summary judgment, the court granted judgment for the
2  government defendants and against plaintiffs. The court held the following two-
3  pronged analysis applied:

4    (i)    Before determining the level of scrutiny to be applied, the court first
5  has to determine whether the statute implicates a Second Amendment right as
6  articulated in Heller. If it does not, the inquiry is at an end, and plaintiff loses.

7    (ii)    If such a right is implicated, the court evaluates the statute under some
8  form of "means-end" scrutiny. If the law passes muster under that standard, it is
9  constitutional. If it fails, it is invalid. (2011 U.S. Dist. LEXIS 99837, *65.)

10    Addressing the first prong, the court held that the statute's "proper cause"
11  requirement for carrying handguns does **not** implicate a Second Amendment right as
12  articulated in Heller. (2011 U.S. Dist. LEXIS 99837, *65, 66-82, 103.) (See also
13  Dorr v. Weber (N.D. Iowa) 741 F. Supp.2d 993, 1005 ["a right to carry a concealed
14  weapon under the Second Amendment has not been recognized to date;" moreover,
15  Heller's limiting language made clear that the Supreme Court did not disturb its
16  ruling in Robertson v. Baldwin, 165 U.S. at 281-282, that the Second Amendment is
17  not infringed by laws prohibiting the carrying of concealed weapons]; Gamble v.
18  United States (D.C. 2011) 30 A.3d 161, 164[court rejected plaintiff's challenge to
19  his conviction for carrying a pistol without a license, holding that "carrying a
20  concealed weapon is not protected by the Second Amendment"]; Martinkovich v.
21  Oregon Legislative Body (D. C. Ore. 2011) 2011 U.S. Dist. LEXIS 117277, *5
22  ["Because Plaintiff does not have a constitutional right to carry a concealed weapon,
23  Plaintiff fails to state a claim for relief . . . in connection with the denial of
24  Plaintiff's [CCW license] renewal under the Second Amendment"]; United States v.
25  Hart (D. Mass. 2010) 726 F.Supp.2d 56, 60 ["Heller does not hold, nor even
26  suggest, that concealed weapons laws are unconstitutional"]; Sims v. U.S. (2008)
27  963 A.2d 147, 150 [Second Amendment does not "compel the District to license a
28  resident to carry and possess a handgun outside the confines of his home, however

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-13-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 broadly defined"].)

2      State courts agree that there is no individual constitutional right to carry a
3 concealed weapon under the Second Amendment. Specifically, California courts
4 have concluded that California Penal Code section 12025, which prohibits carrying
5 a concealed weapon, is constitutional in the face of challenges similar to the one
6 posited here. In People v. Yarbrough (2008) 169 Cal.App.4th 303, 86 Cal.Rptr.3d
7 674, the court held that (i) section 12025(a) does not prohibit or even regulate the
8 possession of a handgun in the home for purposes of self-defense, as in Heller (id. at
9 313), and (ii) unlike possession of a gun for protection within a residence, carrying a
10 concealed firearm in public presents a recognized "threat to public order, and is
11 prohibited as a means of preventing physical harm to persons other than the
12 offender" (id. at 314 (quotation marks omitted)).

13      Yarbrough also noted that Heller "specifically expressed constitutional
14 approval of the accepted statutory proscriptions against carrying concealed
15 weapons" (169 Cal.App.4th at 314, citing Heller, 554 U.S. at 626), before
16 concluding that the prohibition on the carrying of a concealed weapon without a
17 permit continues to be a lawful exercise by the state of its regulatory authority,
18 notwithstanding the Second Amendment. (169 Cal.App.4th at 314; accord, People
19 v. Flores (2008) 169 Cal.App.4th 568, 575, 86 Cal.Rptr. 3d 804 [citing Heller and
20 Robertson in holding, "[g]iven this implicit approval of concealed firearm
21 prohibitions, we cannot read Heller to have altered the courts' longstanding
22 understanding that such prohibitions are constitutional"]; see also Williams v. State
23 of Maryland (2011) 417 Md. 479, 496, 10 A.3d 1167, 1177-1178 [statute
24 "prohibiting wearing, carrying, or transporting a handgun, without a permit and
25 outside of one's home," is "outside of the scope of the Second Amendment"];
26 Kansas v. Knight, supra, 44 Kan.App.2d at 684-686 [Heller does not extend to
27 individuals the right to carry a concealed firearm outside the home; "the Heller
28 Court considered concealed firearms prohibitions to be presumptively constitutional

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-14-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1  under the Second Amendment"].)

2      Thus, because Plaintiff does not have a right to carry a concealed handgun
3  under the Second Amendment, summary judgment should be granted to the TPD.

4      **B.    TPD's Policy Did Not Burden Plaintiff's Second Amendment**
5           **Rights And Thus Rational Basis Review Would Apply**

6      Assuming arguendo that the Second Amendment created a right to carry a
7  concealed handgun, the TPD's CCW Policy does not burden that right.  Thus, the
8  Policy's constitutionality is determined under the highly deferential rational basis
9  review.  (Richards v. County of Yolo, 2011 U.S. Dist. LEXIS 51906, *11.)  The
10 court in Richards upheld the county's "good cause" policy which, similar to the
11 TPD's Policy, listed as an **invalid** reason for a CCW license "self-defense 'without
12 credible threats of violence.'"  (Id. at *4.)  The court made two rulings that are
13 significant here:  First, the court held that the Second Amendment did not create a
14 fundamental right to carry a concealed weapon in public.  (Id. at *9.)

15     Second, the court determined that in any event, the policy did not burden the
16 right to keep and bear arms, because (i) the county's policy did not create a total ban
17 on carrying a firearm, and (ii) the California Penal Code "carved out a number of
18 exceptions that allow individuals to possess and carry loaded firearms in public
19 settings," including the setting described in California Penal Code section 12031,
20 "where someone who believes they are in 'immediate, grave, danger and that the
21 carrying of the weapon is necessary for the preservation of that person or property.'"
22 (2011 U.S. Dist. LEXIS 51906, *12.)  The court held that the county's policy did
23 not burden plaintiffs' right to keep and bear arms, even though the CCW license was
24 sought for self-defense purposes:

25     "Under the statutory scheme, even if Plaintiffs are denied a concealed
26     weapon license for self-defense purposes from Yolo County, they are
27     still more than free to keep an unloaded weapon nearby their person,
28     load it, and use it for self-defense in circumstances that may occur in a

Rutan & Tucker, LLP
attorneys at law       102/062579-0097
                       2622337.9 a01/03/12              -15-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1          public setting.  Yolo County's policy does not substantially burden

2          Plaintiffs' right to bear and keep arms."

3   (2011 U.S. Dist. LEXIS 51906, *13.)

4          The court stated:  "It then follows that if the regulation does not place a

5   substantial burden to an individual's fundamental right, then **rational basis review**

6   **applies**."  (2011 U.S. Dist LEXIS 51906, *10-13 (emphasis added).)  A regulation is

7   constitutional under such review if it bears a reasonable relationship to a legitimate

8   government interest.  (Id. at *13.)  Because regulating concealed firearms was an

9   essential part of the county's efforts to maintain public safety and prevent gun-

10  related crimes and the death of its citizens, the policy was "more than rationally

11  related" to these goals, and the county was entitled to summary judgment.  (Id. at

12  *13-14.)

13         Applying the rationale of Richards to the case at bar, the same result should

14  obtain.  Specifically, the Second Amendment does not create a fundamental right to

15  carry a concealed weapon in public, and thus Plaintiff fails to state a claim under

16  Section 1983.  In any event, the TPD's CCW Policy does not create a total ban on

17  carrying a firearm.  Plaintiff need only show that he is subject to a clear and present

18  danger to receive a license.  (Cal. Pen. Code § 12050.)  Moreover, as stated, there

19  are a number of alternative means of self-defense available to Plaintiff.  For

20  example, Plaintiff may (i) carry a loaded weapon, concealed or otherwise, in his

21  home, place of business, or on other designated private property (§ 12026(a), (b));

22  (ii) carry an unloaded firearm in a locked trunk or other locked container in the car

23  (§ 12026.1(a)(1)); and (iii) open carry a loaded weapon while making a lawful arrest

24  (§ 12031(k)), or if he believes he is in immediate, grave danger and the firearm is

25  needed for his self-defense (§ 12031(j)(1)).

26         Because the TPD's CCW Policy does not burden the right to keep and bear

27  arms, rational basis review applies.  And, because regulating concealed firearms is

28  an essential part of the City's efforts to maintain public safety and prevent gun-

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                          -16-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 | related crimes and the death of its citizens (SUF ¶ 1, Ex. A ("Goals")), the Policy is
2 | more than rationally related to these goals, and the City is entitled to summary
3 | judgment.

4 |     **C.**    **TPD's Policy Passes Constitutional Muster Even Under**
5 |             **Heightened Scrutiny**

6 | Assuming arguendo that the TPD's CCW Policy burdens Plaintiff's Second
7 | Amendment rights, so that a heightened judicial scrutiny applies, the Policy still
8 | passes constitutional muster.

9 | As stated, in Kachalsky v. Cacace, supra, 2011 U.S. Dist. LEXIS 99837, the
10 | court found the statute at issue did not implicate a Second Amendment right.
11 | Nevertheless, the court went on to hold that even if the statute were deemed to
12 | substantially burden plaintiffs' rights to keep and bear arms, the court would apply
13 | "intermediate scrutiny" to determine its constitutionality. (Id. at *90.) The statute
14 | passed constitutional muster because it was substantially related to the important,
15 | "even compelling," governmental interest in protecting public safety, and under
16 | intermediate scrutiny, all that a defendant need show is a "reasonable" fit between
17 | the legislative ends and the means chosen to accomplish those ends. (Id. at *91, 94;
18 | United States v. Marzzarella (3d Cir. 2010) 614 F.3d 85, 98 [under intermediate
19 | scrutiny, the state's policy need not be perfect, only substantially related to a
20 | "significant," "substantial," or "important" governmental interest]; see also Clark v.
21 | Jeter (1988) 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465.) Citing the
22 | compelling interest in protecting public safety (id. at *94-96), the court held that
23 | requiring a showing of "proper cause" was substantially related to that interest:

24 |     "The statute does not function as an outright ban on concealed carry,
25 |     but rather calls for individualized, case-by-case determinations
26 |     regarding whether full-carry permit applicants have an **actual and**
27 |     **articulable** – rather than merely speculative, potential, or even
28 |     specious – **need for self-defense**. As crafted, the statute seeks to limit

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-17-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1    the use of handguns to self-defensive purposes . . . rather than for some

2    other use that has not been recognized as falling within the protections

3    of the Second Amendment."

4    (Id. at \*99-100 (emphasis added).)

5    The same is true in the case at bar.  The TPD's CCW Policy's good cause

6 requirement is substantially related to serve the important governmental interest in

7 public safety.  (SUF ¶ 1, Ex. A ("Goals").)  Even if limiting CCW licenses to only

8 those who demonstrate a clear, present, and documented danger might not be the

9 most precisely focused means to achieve that end, intermediate scrutiny permits the

10 government to paint with a broader brush.  Moreover, because the governmental

11 objective is exceptionally compelling in this area, the state must be afforded wider

12 latitude to combat the great social harm inflicted by gun violence.

13    Similarly, Peruta v. San Diego County, supra, 758 F.Supp.2d 1106, involved

14 a Second Amendment challenge to the county's CCW policy which, as here,

15 required an applicant to establish "good cause" for obtaining a license.  (Id. at

16 1109.)  The court upheld the CCW policy, finding that California Penal Code

17 sections 12025, 12031, and 12050 and the CCW policy, when considered together,

18 did not unconstitutionally burden a person's right to carry an operable firearm for

19 the purposes of immediate self-defense.  (Id. at 1117.)  The court found that there

20 was "an important distinction" between the regulation at issue in Heller and

21 California law:  Whereas Heller addressed a total ban on handguns in the home and

22 a requirement that other firearms be kept inoperable at all times, without exception,

23 making it impossible for citizens to use firearms in self-defense, the California Penal

24 Code contains an exception for self-defense.  (Id. at 1112.)  The court then noted:

25    "Here, to the extent that Penal Code sections 12025 and 12050 and

26    Defendant's policy burden conduct falling within the scope of the

27    Second Amendment, **if at all**, the burden **is mitigated by the**

28    **provisions of section 12031 that expressly permit loaded open carry**

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12

-18-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1  **for immediate self-defense**. . . . Because Defendant's policy for

2  issuing concealed carry licenses under section 12050 **would pass**

3  **constitutional muster even if it burdens protected conduct**, the

4  Court does not need to decide whether the Second Amendment

5  encompasses Plaintiffs' asserted right to carry a loaded handgun in

6  public."

7  (Id. at 1114-1115 (emphasis added).)

8  Applying intermediate scrutiny to the county's "good cause" policy, the

9  Peruta court held the county had substantial interests (i) in public safety, (ii) in

10  reducing the number of concealed weapons in public in order to reduce the risks to

11  other members of the public who use the streets and go to public accommodations,

12  and (iii) in reducing the rate of gun use in crime. (758 F.Supp.2d at 1117.) The

13  policy of requiring documented good cause was reasonably related to those interests,

14  because it helped differentiate between individuals who had a bona fide need to

15  carry a concealed handgun for self-defense and individuals who did not. (Id.) The

16  same is true here, and thus the TPD is entitled to summary judgment.

17  **D.**    **There Is No Cause Of Action Under Section 1983 For A Violation**

18  **Of A State Statute**

19  Finally, to state a claim under Section 1983, Plaintiff must allege he was

20  deprived of some right guaranteed by the United States Constitution or federal law.

21  (American Mfrs. Mutual Ins. Co. v. Sullivan (1999) 526 U.S. 40, 49-50, 119 S.Ct.

22  977, 985, 143 L.Ed.2d 130.) Plaintiff, however, suggests that the TPD **violated**

23  **Section 12050** by interpreting its "good cause" requirement in an overly restrictive

24  way. (Second Amended Complaint ¶ 26 [TPD's "**interpretation of Penal Code**

25  **§ 12050's requirements of . . . 'good cause'** beyond the interests of self-defense

26  violates the Second and Fourteenth Amendments"] (emphasis added).)

27  To the extent Plaintiff simply disagrees with the TPD's interpretation of

28  Section 12050's good cause requirement, Plaintiff has failed to state a claim for a

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                    -19-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1 civil rights violation, for there can be no claim for relief under Section 1983 for a
2 violation of a state statute. (Peruta, supra, 758 F.Supp.2d at 1121, n. 12 ["Plaintiffs
3 have also asserted a claim for relief under 42 U.S.C. § 1983 for Defendant's alleged
4 violation of California Penal Code section 12050. Because there is no cause of
5 action under section 1983 for a violation of a state statute, *see Moore v. Marketplace*
6 *Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985), the Court dismisses that
7 claim."]; Clark v. Link (4th Cir. 1988) 855 F.2d 156, 163 ["[A] section 1983 claim
8 can only be sustained by allegations and proof of a violation of the Constitution or
9 statutes of the United States and specifically may not rest solely on a violation of
10 state statutes or qualify as a common law tort."].) If Plaintiff believed the TPD
11 misinterpreted Section 12050's "good cause" requirement, he should have filed in
12 state court seeking a writ of mandate, rather than suing for a civil rights violation.

13 **VI. CONCLUSION**

14        Under the authorities cited herein: (i) there is no Second Amendment right to
15 carry a concealed handgun in public; and (ii) even if the TPD Policy did burden
16 Plaintiff's rights, the Policy passes constitutional muster because it is substantially
17 related to important government interests. The denial of the CCW license did not
18 infringe on Plaintiff's ability to defend himself with a firearm in his home or office,
19 and the statutory scheme allows Plaintiff many alternative means of defending
20 himself in public places. Thus, the TPD respectfully requests that judgment be
21 entered against Plaintiff and in favor of the TPD.

22

23 Dated: January 3, 2012                           RUTAN & TUCKER, LLP

24                                                  By: _____
25                                                     Ajit S. Thind
                                                       Attorneys for Defendant
26                                                     TORRANCE POLICE
                                                       DEPARTMENT
27

28

Rutan & Tucker, LLP
attorneys at law

102/062579-0097
2622337.9 a01/03/12                    -20-

Case No. CV11-06154 SJO (JCx)
MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT