1  ANDREA SHERIDAN ORDIN, County Counsel
   ROGER H. GRANBO, Assistant County Counsel
2  JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
   (SBN 191477) • jlehman@counsel.lacounty.gov
3  648 Kenneth Hahn Hall of Administration
   500 West Temple Street
4  Los Angeles, California 90012-2713
   Telephone: (213) 974-1908 · Fax: (213) 626-2105
5
   Attorneys for Defendant
6  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 ROBERT THOMSON,                        CASE NO. CV 11-06154 SJO (JCx)

12          Plaintiff,
                                          **DEFENDANT LOS ANGELES
13      v.                                COUNTY SHERIFF'S
                                          OPPOSITION TO PLAINTIFF'S
14 TORRANCE POLICE                        MOTION FOR SUMMARY
   DEPARTMENT and THE LOS                 JUDGMENT**
15 ANGELES COUNTY SHERIFF'S
   DEPARTMENT,                            [Filed concurrently with Response to
16                                        Plaintiffs' Separate Statement of
          Defendants.                     Uncontroverted Facts & Conclusions of
17                                        Law and Evidence Thereto]

18
                                          **MSJ Date:**    **February 27, 2012**
19                                        Time:            10:00 a.m.
                                          Ctrm:            1
20
                                          Action Filed:    July 26, 2011
21                                        **Trial Date:**  **None set**

22

23

24

25

26

27

28
   HOA.852908.1                                    CV 11-06154 SJO (JCx)
                                          LASD Opposition to Plaintiff's MSJ

1

# TABLE OF CONTENTS

2
**Page**

3 INTRODUCTION ............................................................................................... 2

4 STATEMENT OF FACTS ................................................................................. 2

5     California's Licensing Laws ..................................................................... 2

6     LASD CCW Application Process ........................................................... 3

7     LASD's Good Cause Requirement .......................................................... 4

8     Plaintiff's CCW Application to the LASD .............................................. 6

9 ARGUMENT ...................................................................................................... 7

10 I.  THERE IS NO CONSTITUTIONAL RIGHT TO CARRY A
      LOADED CONCEALED WEAPON IN PUBLIC UNDER THE
11    SECOND AMENDMENT. .............................................................. 7

12    A.  The Second Amendment Does Not Include the Right to Keep
          and Carry a Weapon in Any Manner. .................................... 7

13
      B.  California Penal Code Section 12050's Restrictions on Concealed
14        Weapons Do Not Infringe on the Right of Self-Defense in the
          Home. ...................................................................................... 9

15
   II. THE LASD'S LICENSING PRACTICES WITHSTAND
16    CONSTITUTIONAL SCRUTINY. ............................................... 10

17 III. THE LASD DID NOT IMPROPERLY DENY PLAINTIFF'S
      APPLICATION. ............................................................................. 14

18 CONCLUSION ................................................................................................. 15

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*CBS Inc. v. Block,*
42 Cal.3d 646 (1986).............................................................................2

*Clark v. Jeter,*
486 U.S. 456, 461 (1988) ...................................................................11

*District of Columbia v. Heller*
554 U.S. 570, 128 S.Ct. 2783 (2008) ...........................................passim

*Gamble v. United States,* 30 A.3d 161,
___ (2011 D.C. App. LEXIS 615 at *7-8...........................................8

*Gifford v. City of Los Angeles,*
88 Cal.App.4th 801 (2001)...................................................................2

*Heller v. District of Columbia (Heller II),*
698 F.Supp.2d 179 (D.D.C. 2010)....................................................10

*Kelley v. Johnson,*
425 U.S. 238 (1976) ...........................................................................13

*Marshall v. Walker,*
958 F.Supp. 359 (N.D. Ill. 1997).......................................................14

*McDonald v. City of Chicago,*
130 S.Ct. 3020  (2010).........................................................7, 8, 10, 11

*Medtronic, Inc. v. Lohr,*
518 U.S. 470  (1996) ..........................................................................11

*Nichols v. County of Santa Clara,*
223 Cal.App.3d 1236 (1990)................................................................2

*People v. Ellison,*
196 Cal.App.4th 1342 (2011)...............................................................9

*People v. Flores,*
169 Cal.App.4th 568 (2008)..............................................................8, 9

*People v. Hale,*
43 Cal.App.3d 353 (1974)................................................................9, 10

*People v. Hodges,*
70 Cal.App.4th 1348 (1999)...............................................................10

*People v. Marin,*
795 N.E.2d 953 (Ill. App. 2003)........................................................14

*People v. Wasley,*
    245 Cal.App.2d 383 (1966) ............................................................8

*People v. West,*
    422 N.E.2d 943 (Ill.App. 1981)....................................................14

*People v. Yarbrough,*
    169 Cal.App.4th 303 (2008).................................................8, 9, 13

*Peruta v. County of San Diego,*
    758 F.Supp.2d 1106 (on appeal to 9th Circuit) .......................10, 12

*Richards v. County of Yolo,*
    2011 U.S. Dist. LEXIS 51906 .......................................................9

*Robertson v. Baldwin,*
    165 U.S. 275 (1897) ......................................................................7

*Schall v. Martin,*
    467 U.S. 253 (1984) ....................................................................13

*United States v. Marzzarella,*
    614 F.3d 85, 97 (3rd Cir. 2010)...................................................10

*United States v. Morrison,*
    529 U.S. 598, 618 (2000) ............................................................11

*United States v. Salerno,*
    481 U.S. 739 (1987) ....................................................................13

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) .......................................................10


**STATUTES**

42 U.S.C. § 1983...............................................................................7

California Penal Code § 12025 .....................................................9, 13

California Penal Code § 12025(a)(2) ...................................................8

California Penal Code § 12050...................................................2, 4, 9

California Penal Code § 12050(a)(1)(A) .............................................2

California Penal Code § 830.6 .............................................................3

California Penal Code §§ 12050 – 12054............................................2

California Penal Code §12031 .....................................................9, 13

1

## INTRODUCTION

2    Plaintiff Robert Thomson claims that he was improperly denied a concealed
3 weapons (CCW) permit by moving Defendant Los Angeles County Sheriff's
4 Department (LASD), as well as the Torrance Police Department.  Plaintiff alleges
5 that the LASD's definition of good cause, as required by California Penal Code §
6 12050, violates the Second Amendment of the United States Constitution.  Plaintiff's
7 argument is unsupported by the law as there is no constitutional right to carry a
8 concealed firearm in public.  In fact, a Central District of California court recently
9 upheld the LASD's good cause policy as constitutional against a similar Second
10 Amendment challenge.  (See Exh. D to LASD Response to Separate Statement.)  It
11 is Defendants, not Plaintiff, who should be entitled to summary judgment.

12

## STATEMENT OF FACTS

13 **California's Licensing Laws**

14    California Penal Code § 12050(a)(1)(A) authorizes a county sheriff to issue a
15 license to carry a pistol, revolver, or other firearm capable of being concealed upon
16 the person (hereinafter "CCW permit") upon the existence of good cause, and
17 provided that the applicant meets other criteria provided for in the Penal Code.
18 California is a "may issue" state, meaning that law enforcement officials have the
19 discretion to grant or deny a permit based on a number of statutory factors.
20 California Penal Code §§ 12050 – 12054 set forth the general criteria that California
21 CCW applicants must meet.  Applicants must be of good moral character, be a
22 resident of or spend substantial time in the County in which they apply, demonstrate
23 good cause and take a firearms course.  (See Penal Code §§ 12050-12054.)  The
24 language of Section 12050 is permissive, not mandatory, and gives extremely broad
25 discretion to a sheriff or police chief in issuing CCW permits — even to individuals
26 who meet the minimum statutory requirements. *Gifford v. City of Los Angeles*, 88
27 Cal.App.4th 801, 805 (2001) quoting in part, *Nichols v. County of Santa Clara*, 223
28 Cal.App.3d 1236, 1241 (1990); *CBS Inc. v. Block*, 42 Cal.3d 646, 655 (1986).

HOA.852908.1

**LASD CCW Application Process**

Paul Tanaka is the Undersheriff for Los Angeles County. As part of his responsibilities as Undersheriff, he has been designated to act as the Sheriff's sole authorized representative for reviewing applications for CCW licenses for the County of Los Angeles.  While members of his staff make recommendations regarding applications, he is the final decision-maker.  (LASD UF 1)[1]  As part of his evaluation of CCW applications, he will review the entire application packet and any and all supporting documentation.  (LASD UF 2)

In Los Angeles County, there are four distinct categories of CCW licenses: Employment, Standard, Judges, and Reserve Police Officers.  The Employment CCW license is issued only to a person who spends a substantial period of time in his or her principal place of employment or business in Los Angeles County.  The Standard CCW license is issued to County residents or to residents of a particular city within Los Angeles County.  The Judge CCW license is issued to California judges, full-time commissioners, and to federal judges and magistrates of the federal courts.  The Reserve Police Officer CCW license may be issued to reserve police officers appointed pursuant to California Penal Code § 830.6.  (LASD UF 3)

If an applicant resides in an incorporated city not policed by the LASD, the applicant must apply to the chief of police of their city of residence for a concealed weapons license and have such application acted upon.  Within 60 days after a denial of such application, such city resident may file a separate application with the LASD, attaching a copy of the application denied by the chief of police.  The LASD will exercise independent discretion in granting or denying licenses to such person but may review, consider, and give weight to the grounds upon which such denial

---

[1] Defendant LASD's Undisputed Facts and Evidence are included in its Response to Plaintiff's Separate Statement.

1   was made.  (LASD UF 4)  As set forth in California Penal Code sections 12050-

2   12054, CCW applicants must be of good moral character, be a resident of, or spend

3   substantial time in the County they apply in, take a firearms course, and demonstrate

4   good cause for the license.  (LASD UF 5)

5   **LASD's Good Cause Requirement**

6            The ability of private citizens to carry a concealed weapons is of great

7   concern to the LASD.  The LASD's overriding policy is that no CCW license should

8   be granted merely for the personal convenience of the applicant.  No position or job

9   application in itself shall constitute good cause for the issuance, or for the denial, of

10   a CCW license.  (LASD UF 6)  The LASD defines "good cause" under California

11   Penal Code section 12050 as requiring:

12                    convincing evidence of a clear and present danger to life

13                    or of great bodily harm to the applicant, his spouse or

14                    dependent child, which cannot be adequately dealt with by

15                    existing law enforcement resources and which danger

16                    cannot be reasonably avoided by alternative measures, and

17                    which danger would be significantly mitigated by the

18                    applicant's carrying of a concealed firearm.  (LASD UF 7)

19   Each CCW application is individually reviewed for cause.  The LASD's definition

20   of good cause has been in existence since at least 2005.  This definition of good

21   cause, or one similar to it, is utilized by many other cities and counties within

22   California, including San Diego.  (LASD UF 8)

23            In evaluating whether an applicant has established good cause, an applicant's

24   stated reason of self-defense is not enough.  (LASD UF 9)  The applicant must

25   demonstrate a credible threat of violence which would justify the need to possess a

26   concealed weapon.  If an applicant claims that he or she has been threatened in

27   his/her application, the LASD looks for documentation of that threat, such as police

28   reports or other evidence.  (LASD UF 10)  Recently, a Central District of California

1   court upheld the very policy at issue here, and found that the LASD's good cause

2   policy did not violate the Second Amendment.  (LASD UF 21).

3       One of the purposes for the LASD's policy is to protect against gun violence

4   to the community at large, as well as to protect officers conducting law enforcement

5   operations on the streets.  (LASD UF 11)  Gun violence is a problem throughout the

6   State of California and Los Angeles County is no exception.  The vast majority of

7   homicides in Los Angeles County are committed with the use of guns.  Handguns

8   are of particular concern because they are much more likely to be used than

9   shotguns and rifles.  Because handguns are small, easy to conceal, and deadly at

10  short range, they are of paramount concern and danger.  Further, most of the violent

11  acts committed in this County involving the use of guns are by gang members.

12  (LASD UF 12)

13      The presence of more guns on the streets of Los Angeles County creates

14  many problems for law enforcement officers.  Officers are often charged with

15  monitoring public gatherings as well as with breaking up public nuisances.  Officers

16  must act quickly whenever a disturbance occurs.  Often times, this involves isolating

17  one or two problem individuals.  However, if multiple persons within a crowd are

18  carrying concealed weapons, this creates an increased likelihood that guns will be

19  brandished or used.  Thus, the increased presence of guns creates not only increased

20  safety problems for officers but also for members of the community at large.

21  (LASD UF 13)  It is the LASD's position that increasing the numbers of concealed

22  weapons in the community increases the threat of gun violence to the community at

23  large, to those who use the streets and go to public accommodations, and to law

24  enforcement officers patrolling the streets.  Further, the increased presence of

25  concealed handguns make law enforcement operations more difficult thus taking

26  away valuable resources which would be better used conducting law enforcement

27  operations.  (LASD UF 14)  Los Angeles County's good cause requirement is

28  intended to drastically restrict the number of persons who are secretly armed in the

1   County. (LASD UF 15) At present, there are approximately 400 concealed

2   weapons permits that were issued by the LASD. The population of Los Angeles

3   County was estimated to be 10,441,080 people as of January 2010. (LASD UF 16)

4   **Plaintiff's CCW Application to the LASD**

5       On or about April 7, 2011, Plaintiff submitted a CCW application to the

6   LASD. (UF 17). In his application, Plaintiff states as justification:

7           I am a licensed California Bail Agent. I have been
    licensed for over three years. I am alone when I meet with
8           co-signers and defendants at their homes in violent high
    crime areas within Los Angeles County such as Compton,
9           Inglewood, Watts, and South Los Angeles as well as city
    and county jails to fill out paperwork and receive payment
10          for I am called to post bail at all hours of the day and
    night. Often when I bail out a person I am in
11          neighborhoods where other suspects are a danger to me. I
    don't' know the backgrounds of clients who may be
12          disgruntled and have a grudge against me. While in the
    process of my Bail Agent duties, I sometimes have in my
13          possession over $10,000 in cash.

14          I fear great bodily injury or death from an armed assailant
    who has the intent to steal my case of harm me. I am a
15          man of small stature, and work very late hours of the
    night. The criminal element that I deal with presents a
16          danger to my safety that cannot be mitigated by law
    enforcement resources or other means available to me. I
17          don't have any other means of defending myself.

18  (LASD UF 18). The LASD reviewed Plaintiff's application and determined that he

19  failed to show good cause as required by LASD policy, and as defined above.

20  Specifically, Plaintiff failed to show convincing evidence of a clear and present

21  danger to life or of great bodily harm to the applicant, his spouse or dependent child,

22  which cannot be adequately dealt with by existing law enforcement resources and

23  which danger cannot be reasonably avoided by alternative measures, and which

24  danger would be significantly mitigated by the applicant's carrying of a concealed

25  firearm. (LASD UF 19).

26      Plaintiff now sues Defendants LASD and the Torrance Police Department

27  claiming that the denial of his CCW application violates his Second Amendment

28  right to bear arms. All parties have filed cross-motions for summary judgment.

1

## ARGUMENT

2  **I.    THERE IS NO CONSTITUTIONAL RIGHT TO CARRY A LOADED**
3       **CONCEALED WEAPON IN PUBLIC UNDER THE SECOND**
        **AMENDMENT.**

4        To prevail under 42 U.S.C. § 1983, Plaintiff must show a violation of a

5  constitutional right. (Ninth Circuit Model Jury Inst. 9.4.) Plaintiff's lawsuit fails at

6  the outset because there is no constitutional right to carry a loaded concealed

7  weapon in public under the Second Amendment.

8        In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2788, 2822

9  (2008), the United States Supreme Court held that the Second Amendment protects

10  an individual's right to possess firearms in the home for self-defense and that the

11  city's total ban on handguns, as well as its requirement that firearms in the home be

12  kept nonfunctional even when necessary for self-defense, violated that right. In

13  *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3026, 3044 (2010), the court

14  evaluated restrictions similar to those in *Heller* and held that the Due Process Clause

15  of the Fourteenth Amendment incorporates the Second Amendment right to possess

16  a handgun in the home for self-defense.

17        **A.    The Second Amendment Does Not Include the Right to Keep**
           **and Carry a Weapon in Any Manner.**

18

19        Plaintiff argues that the decisions regarding the ability to have a weapon in

    one's home also establish his right to carry a concealed weapon in public. However,
20

    the law does not support his position. Since 1897, in *Robertson v. Baldwin*, 165
21

    U.S. 275, 281-282 (1897), the Supreme Court recognized that the Second
22

    Amendment right of people to keep and bear arms is not infringed by laws
23

    prohibiting the carrying of concealed weapons. That principle has not changed. In
24

    *Heller*, the Supreme Court determined that the "core right" embodied in the Second
25

    Amendment does not include the right to keep and carry any weapon in any manner:
26

27            the right secured by the Second Amendment is not
            unlimited. From Blackstone through the 19th-century
28            cases, commentators and courts routinely explained that
            the right [to keep and bear arms] was not a right to keep

1
2

and carry any weapon whatsoever in any manner
whatsoever and for whatever purpose.

*Heller*, 128 S.Ct. at 2816.  While *Heller* does not specifically address concealed

3
4

weapons in public, it does acknowledge that the Second Amendment right to bear

5

arms is limited.

6

Thus far, no court has extended *Heller* or *McDonald* to bestow a

7

constitutional right to carry a concealed weapon in public. See e.g., *Gamble v.*

8

*United States*, 30 A.3d 161, ___ (2011 D.C. App. LEXIS 615 at *7-8.  Instead,

9

courts have upheld prohibitions on carrying a concealed weapon in public against

10

Second Amendment challenges.  See e.g., *People v. Flores*, 169 Cal.App.4th 568,

11

575-576 (2008*); People v. Yarbrough*, 169 Cal.App.4th 303, 312-314 (2008).  In

12

*People v. Yarbrough*, Yarbrough was convicted of violating California Penal Code §

13

12025(a)(2) for carrying a concealed weapon on residential property that was fully

14

accessible to the public.  Yarbrough challenged his conviction on many grounds,

15

including the Second Amendment.  Noting that *Heller* had "specifically expressed

16

constitutional approval of the accepted statutory proscriptions against carrying

17

concealed weapons," the *Yarbrough* court held:

18
19
20
21
22
23
24
25
26

> we find nothing in Penal Code section 12025, subdivision
> (a), that violates the limited right of the individual
> established in *Heller* to possess and carry weapons in case
> of confrontation. Section 12025, subdivision (a), does not
> broadly prohibit or even regulate the possession of a gun
> in the home for lawful purposes of confrontation or self-
> defense, as did the law declared constitutionally infirmed
> in *Heller*. Rather, section 12025, subdivision (a), in much
> more limited fashion, specifically defines as unlawful
> carrying concealed within a vehicle or "concealed upon his
> or her person any pistol, revolver, or other firearm capable
> of being concealed upon the person." Further, carrying a
> firearm concealed on the person or in a vehicle in violation
> of section 12025, subdivision (a), is not in the nature of a
> common use of a gun for lawful purposes which the court
> declared to be protected by the Second Amendment in
> *Heller*. (See *People v. Wasley* 245 Cal.App.2d 383, 386
> (1966.)

27

The *Yarbrough* court held that, unlike possession of a gun for protection

28

within a residence, carrying a concealed firearm presents a recognized "threat to

HOA.852908.1

1  public order," and is "prohibited as a means of preventing physical harm to persons
2  other than the offender.' *Id* at 314, citing *People v. Hale*, 43 Cal.App.3d 353, 356
3  (1974).  A person who carries a concealed firearm on his person or in a vehicle,
4  which permits the individual immediate access to the firearm but impedes others
5  from detecting its presence, poses an 'imminent threat to public safety. *Id.* at 313-
6  314.

7       Similarly, in *People v. Flores*, 169 Cal.App.4th 568 (2008), the court affirmed
8  convictions under California Penal Code § 12025 and California Penal Code §12031
9  in the face of a Second Amendment challenge.  With regard to the section 12031
10  conviction, the court reasoned: "there can be no claim that section 12031 in any way
11  precludes the use of handguns held and used for self-defense in the
12  home…[i]nstead, section 12031 is narrowly tailored to reduce the incidence of
13  unlawful public shootings, while at the same time respecting the need for persons to
14  have access to firearms for lawful purposes, including self-defense. *Id.* at 576; see
15  also *People v. Ellison*, 196 Cal.App.4th 1342 (2011) (conviction of carrying
16  concealed firearm did not violate Second Amendment).

17       In *Richards v. County of Yolo*, 2011 U.S. Dist. LEXIS 51906 (on appeal to
18  9th Cir), plaintiffs challenged Yolo County's good cause policy after they were
19  denied concealed weapons permits. *Id.* at *3-4.  In granting the county's motion for
20  summary judgment, the court held that the Second Amendment did not create a
21  fundamental right to carry a concealed weapon in public. *Id.* at *10.

22    **B.    California Penal Code Section 12050's Restrictions on
     Concealed Weapons Do Not Infringe on the Right of Self-
23    Defense in the Home.**

24       Penal Code section 12050 does not regulate the possession of a gun in the
25  home for lawful purposes of confrontation or self-defense, as did the law declared
26  unconstitutional in *Heller*.  Rather, it involves the licensing of persons in the context
27  of the regulation of carrying concealed weapons in public places.  Carrying a
28  firearm concealed on the person or in a vehicle is not in the nature of a common use

HOA.852908.1                                          CV 11-06154 SJO (JCx)
                                              LASD Opposition to Plaintiff's MSJ

-9-

1   of a gun for lawful purposes which the court declared to be protected by the Second

2   Amendment in *Heller*.  Unlike possession of a gun for protection within a residence,

3   carrying a concealed firearm presents a recognized "threat to public order," and is

4   "'prohibited as a means of preventing physical harm to persons other than the

5   offender.' [Citation.]"  *People v. Hale*, 43 Cal.App.3d 353, 356 (1974).  A person

6   who carries a concealed firearm on his person or in a vehicle, "which permits him

7   immediate access to the firearm but impedes others from detecting its presence,

8   poses an 'imminent threat to public safety ....' [Citation.]"  *People v. Hodges*, 70

9   Cal.App.4th 1348, 1357 (1999).

10        Here, California law does not impede the ability of individuals to defend

11   themselves with firearms in their homes, as set forth in *Heller*.  Instead, as the

12   California courts recognize above, there is no right to carry a concealed weapon in

13   public under the Second Amendment.  California's regulation of both concealed

14   carry of firearms and carry of loaded firearms in public do not infringe on the

15   Second Amendment.  Similarly, the LASD's policies and practices regarding the

16   issuance of CCW permits do not impact any recognized Second Amendment right.

17   Because Plaintiff cannot show that he was denied any constitutional right, his civil

18   rights claim fails at the outset, and summary judgment is proper.

19   **II.    THE LASD'S LICENSING PRACTICES WITHSTAND
           CONSTITUTIONAL SCRUTINY.**

20

21        Nonetheless, even if this Court finds that the Second Amendment is infringed,

     the LASD's policies and practices withstand constitutional scrutiny. The majority of

22

23   courts both before and after *Heller* and *McDonald* have employed an intermediate

     scrutiny standard when evaluating gun regulations.  See *Peruta v. County of San*

24

25   *Diego*, 758 F.Supp.2d 1106 (on appeal to 9th Circuit) (citing *United States v.*

     *Skoien*, 614 F.3d 638, 641 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d

26

27   85, 97 (3rd Cir. 2010); *Heller v. District of Columbia* (*Heller II*), 698 F.Supp.2d

28   179, 188 (D.D.C. 2010) (surveying the landscape of post-*Heller* decisions and

HOA.852908.1

1    joining the majority of courts in holding that intermediate scrutiny is the most

2    appropriate standard).  Intermediate scrutiny requires that the challenged statute or

3    regulation "be substantially related to an important governmental objective." *Clark*

4    *v. Jeter*, 486 U.S. 456, 461 (1988).

5          Recently, a United States District Court Judge held that the LASD's CCW

6    policy was constitutional and did not violate the Second Amendment.  (LASD UF

7    21)  In *Jonathan Birdt v. Charlie Beck et al.*, United States District Court Case No.

8    CV 10-08577 JAK, the plaintiff, like Mr. Thomson here, alleged that the LASD's

9    policy violated the Second Amendment because it required documentation of a clear

10   and present anger to the applicant.  (See Exh. D to LASD Response to Plaintiff's

11   Separate Statement)  Judge Kronstadt held that the LASD's good cause definition

12   withstood intermediate scrutiny and was substantially related to an important

13   government objective.[2]  The LASD's policy is no less constitutional in this case.

14         The LASD's policies and practices in limiting concealed carry licensing to

15   individuals with specifically identifiable and documented needs for concealed carry

16   withstand intermediate scrutiny.  Maintaining public safety and preventing crime are

17   clearly important governmental interests. *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

18   475 (1996) (noting that States have "great latitude" to use their police powers);

19   *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("there is no better example of

20   the police power than the suppression of violent crime")  The regulation of

21   concealed firearms is a critical factor in accomplishing these interests. *McDonald*,

22   *supra*, 130 S.Ct. at 3126 ("private gun regulation is the quintessential exercise of a

23   State's police power.")

24         Handguns are unquestionably dangerous and contribute to the majority of

25   criminal cases that result in a person's death.  LASD UF 11-15; see also *Heller*,

26   _____

27       [2] Mr. Birdt has filed a Notice of Appeal challenging Judge Kronstadt's ruling.

28

1  *supra*, 554 U.S. at 636 (acknowledging the problem of handgun violence in the

2  U.S.).  A 2001 study revealed that a ten percent increase in handgun ownership

3  correlates with a two percent increase in homicides.  *See* Michael B. de Leeuw et al.,

4  *Beyond the Final Frontier: a "Post-Racial" America?: The Obligations of*

5  *Lawyers, the Legislature, and The Court: Ready Aim, Fire? District of Columbia v.*

6  *Heller and Communities of Color*, 25 Harv.BlackLetter J. 133, 149 (Spring 2009).

7  Handgun possession is a particular problem in Los Angeles County due to the influx

8  of gang members in recent years.  (See LASD UF 11-15.)

9      Concealed handguns, in particular pose an obvious threat to the public as a

10  concealed handgun generates no special notice until the weapon is brandished.

11  (LASD UF 11-15.)  As more than 90% of police officer killings are caused by guns,

12  high rates of concealed gun carry especially endanger police officers.  *Id*.  Of the

13  536 law enforcement officers killed in the line of duty between 2000 and 2009

14  (including 47 in California), 490 were killed with firearms and of those, handguns

15  were used by the perpetrator 73% of the time.  See Fed. Bureau of Investigations,

16  U.S. Dep't of Justice, *Law Enforcement Officers Killed and Assaulted* (2009), tables

17  1 and 27, *available at* http://www.fbi.gov/about-us/cjis/ucr/leoka/2009/leoka-2009.

18      In *Peruta*, the Southern District of California found that the San Diego Sheriff

19  had "an important and substantial interest in public safety and in reducing the rate of

20  gun use in crime;" "in reducing the number of concealed weapons in public in order

21  to reduce the risks to other members of the public who use the streets and go to

22  public accommodations;" and "in reducing the number of concealed handguns in

23  public because of their disproportionate involvement in life-threatening crimes of

24  violence, particularly in streets and other public places." *Peruta, supra*, 758

25  F.Supp.2d at 1117.  The court also held that the Sheriff's policy which differentiated

26  between "individuals who have a bona fide need to carry a concealed handgun for

27  self-defense and individuals who do not" was reasonably related to the government's

28  important and substantial interest in public safety.  *Id*.

HOA.852908.1

1   That interest is no different in Los Angeles County.  Los Angeles County's
2   practices in limiting CCW licenses to those with specific and documented needs is
3   consistent with the compelling and significant legislative goals underlying Penal
4   Code sections 12025 and 12031: the protection of the public from widespread and
5   unchecked public carry of concealed and loaded firearms.  LASD's policy creates a
6   balance between the competing Second Amendment interests in self-defense and
7   public safety.  The LASD enables those with a clear and present need for self-
8   defense to obtain a concealed weapon permit, so long as they also meet the
9   requirements enumerated in California Penal Code section 12050.  The LASD's
10  policy is reasonably related to the government's important and substantial interest in
11  public safety and concealed weapon control.

12   Maintaining public safety and preventing crime are clearly important (if not
13  paramount) government interests and the regulation of concealed firearms is a
14  critical factor in accomplishing that interest.  LASD UF 11-15; See, e.g., *United*
15  *States v. Salerno*, 481 U.S. 739, 750 (1987); *Schall v. Martin*, 467 U.S. 253, 264
16  (1984); *Kelley v. Johnson*, 425 U.S. 238, 247 (1976) ("The promotion of safety of
17  persons and property is unquestionably at the core of the State's police power ...");
18  *People v. Yarbrough, supra*, 169 Cal.App.4th at 312-314.  The relevant Penal Code
19  provisions are narrowly tailored and substantially related to furthering public safety
20  and reducing crime.  Concealed handguns are the priority of law enforcement
21  everywhere because of the use of the concealed handgun in vast numbers of
22  criminal offenses.  (See LASD UF 11-15.)  Concealed carry of handguns allows for
23  stealth and surprise.  Limiting the number of loaded and concealed firearms in
24  public places helps to keep the balance in favor of law enforcement and avoids the
25  necessity for every place that is open to the public – restaurants, malls, theaters,
26  parks, etc.-- to be equipped with metal detectors, fencing and other forms of
27  security, in order to protect patrons from the fear of widespread and unchecked
28  concealed firearms.

1      Numerous courts have discussed the need for firearm regulation and the need

2  for imposing restrictions on their use:

3              …[A]ccidents with loaded guns on public streets or the
               escalation of minor public altercations into gun battles or,
4              as the legislature pointed out, the danger of a police officer
               stopping a car with a loaded weapon on the passenger seat.
5              … [T]hus, otherwise "innocent" motivations may
               transform into culpable conduct because of the
6              accessibility of weapons as an outlet for subsequently
               kindled aggression. … [T]he underlying activity of
7              possessing or transporting an accessible and loaded
               weapon is itself dangerous and undesirable, regardless of
8              the intent of the bearer since it may lead to the
               endangerment of public safety. … [A]ccess to a loaded
9              weapon on a public street creates a volatile situation
               vulnerable to spontaneous lethal aggression in the event of
10             road rage or any other disagreement or dispute. The
               prevention of the potential metamorphosis of such
11             "innocent" behavior into criminal conduct is rationally
               related to the purpose of the statute, which is to enhance
12             public safety. Because the legislature has a compelling
               interest in preventing the possession of guns in public
13             under any such circumstances, the statute is reasonably
               related to the legislature's purpose of "mak[ing]
14
               communities in this state safer and more secure for their
15             inhabitants."

16  *People v. Marin*, 795 N.E.2d 953, 958–59 (Ill. App. 2003) (citations omitted); see

17  also *Marshall v. Walker*, 958 F.Supp. 359, 365 (N.D. Ill. 1997) (individuals should

18  be able to walk in public "without apprehension of or danger from violence which

19  develops from unauthorized carrying of firearms and the policy of the statute to

20  conserve and maintain public peace on sidewalks and streets within the cities ...")

21  (quoting *People v. West*, 422 N.E.2d 943, 945 (Ill.App. 1981)).  For these reasons,

22  the LASD's policy withstands constitutional scrutiny.

23  **III.   THE LASD DID NOT IMPROPERLY DENY PLAINTIFF'S
           APPLICATION.**

24      LASD's policy was also constitutionally applied to Plaintiff.  Plaintiff's

25  application was reviewed like every other application and underwent the same

26  evaluation every other application did.  (LASD UF 8, 17-19.)  Plaintiff's application

27  was denied because he did not present evidence of a clear and present danger, as

28

1  required by the policy. (LASD UF 8, 17-19.) As such, summary judgment is

2  appropriate.

3  ## CONCLUSION

4      For the foregoing reasons, the LASD asks that the Court grant its Motion, and

5  deny Plaintiff's Motion for Summary Judgment.

6

7  DATED: January 30, 2012        Respectfully submitted,

8                                    ANDREA SHERIDAN ORDIN

9                                    County Counsel

10

11                              By     S/Jennifer A.D. Lehman

12                                      JENNIFER A.D. LEHMAN
                                  Principal Deputy County Counsel

13

14                                    Attorneys for Defendant
                                  LOS ANGELES COUNTY SHERIFF'S

15                                    DEPARTMENT

16

17

18

19

20

21

22

23

24

25

26

27

28