```
 1  TORRANCE CITY ATTORNEY'S OFFICE
    John L. Fellows III (State Bar No. 103968)
 2  City Attorney
    jfellows@TorranceCA.gov
 3  Della Thompson-Bell (State Bar No. 224846)
    Deputy City Attorney
 4  dthompsonbell@TorranceCA.Gov
    3031 Torrance Boulevard
 5  Torrance, CA 90503
    Telephone:  310-618-5810
 6  Facsimile:   310-618-5813

 7  RUTAN & TUCKER, LLP
    Robert S. Bower (State Bar No. 70234)
 8  rbower@rutan.com
    Ajit S. Thind (State Bar No. 268018)
 9  athind@rutan.com
    611 Anton Boulevard, Fourteenth Floor
10  Costa Mesa, California 92626-1931
    Telephone:  714-641-5100
11  Facsimile:   714-546-9035

12  Attorneys for Defendant
    TORRANCE POLICE DEPARTMENT
13
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ROBERT THOMSON, | Case No. CV11-06154 SJO (JCx) |
|---|---|
| Plaintiff, | Date Action Filed: July 26, 2011 |
| vs. | Assigned to:<br>U.S. District Judge S. James Otero |
| TORRANCE POLICE DEPARTMENT and THE LOS ANGELES COUNTY SHERIFFS DEPARTMENT,<br>Defendants. | **DEFENDANT TORRANCE POLICE DEPARTMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF ROBERT THOMSON'S MOTION FOR SUMMARY JUDGMENT** |
| | [Filed Concurrently With TPD's Statement of Genuine Disputes of Material Facts and Declaration of Ajit Singh Thind] |
| | Motion Hearing Date: Feb. 27, 2012<br>Time: 10:00 a.m.<br>Courtroom: 1- 2nd Floor<br>Location: Spring Street |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 3

III. ARGUMENT ......................................................................................................... 3

    A. The Second Amendment Does Not Create A Fundamental Right To Carry A Concealed Handgun In Public ................................. 3

    B. The California Legislative Scheme Does Not Require A CCW Permit To Carry A Firearm For Self-Defense ............................ 6

    C. The Fact That TPD Has Discretion To Deny Applications For A CCW License Does Not Violate The Constitution .................... 8

    D. The TPD's Policy Promotes Important Government Objectives ........................................................................................ 11

    E. The Order in Birdt v. Beck Is On Point ............................................ 12

IV. CONCLUSION .................................................................................................... 14

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-i-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Cantwell v. Connecticut (1940)
310 U.S. 296, 60 S.Ct. 900, 84 L. Ed. 1213 .................................................. 10

Comite de Jornaleros de Redondo Beach v. City of Redondo Beach (9th Cir. 2011)
657 F.3d 936 .................................................................................................. 10

District of Columbia v. Heller (2008)
554 U.S. 570, 128 S.Ct. 2783, 1171 L.Ed.2d 637 ....... 1, 4, 5, 6, 9, 10, 11, 12, 13

Dorr v. Weber (N.D. Iowa)
741 F.Supp.2d 993 ..............................................................................................4

Jerry Beeman and Pharmacy v. Anthem Prescription (9th Cir. 2011)
652 F.3d 1085 ......................................................................................................9

Kachalsky v. Cacace (S.D. N.Y. 2011)
2011 U.S. Dist. *LEXIS* 99837 ........................................................ 5, 6, 10, 11

Peruta v. San Diego County (S.D. Cal. 2010)
758 F.Supp.2d 1106 ..............................................................................................7

Richards v. County of Yolo (E.D. Cal. 2011)
2011 U.S. Dist. *LEXIS* 51906 ..............................................................................5

Robertson v. Baldwin (1897)
165 U.S. 275, 17 S.Ct. 326, 41 L. Ed. 715 ................................................ 4, 5

Staub v. Baxley (1958)
355 U.S. 313, 78 S.Ct. 277, 2 L. Ed.2d 302 .................................................. 10

Swait v. Univ. of Neb. (D. Neb. 2008)
2008 U.S. Dist. *LEXIS* 96665, 2008 WL 5083245 ............................................5

United States v. Hall (S.D. W.Va. 2008)
2008 U.S. Dist. *LEXIS* 59641, 2008 WL 3097558 ............................................5

United States v. Hart (D. Mass. 2010)
726 F.Supp.2d 56 ..................................................................................................5

United States v. Marzzarella (3rd. Cir. 2010)
614 F.3d 85, *cert.* denied 131 S. Ct. 958, 178 L.ed. 2d 790 (2011) .................. 11

**STATE CASES**

People v. Dawson,
403 Ill. App3d 499, 934 N.E.2d 598,
343 Ill. Dec. 274 (Ill. App. Ct. 2010)...........................................................6

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-ii-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

| | Page(s) |
|---|---|

**STATE CASES (CONT.)**

People v. Delacy (2011)
  192 Cal.App.4th 1481, 122 Cal.Rptr.3d 216,
  review denied 2011 Cal. *LEXIS* 5086. (June 8, 2011)..........................................9

People v. Flores (2008)
  169 Cal.App.4th 568, 86 Cal.Rptr.3d 804,
  review denied 2009 Cal. *LEXIS* 2979 (Mar. 18, 2009) ......................................5

State v. Knight (Kan. Ct. App. 2009)
  44 Kan.App.2d 666, 241 P.3d 120,
  review denied 2011 Kan. *LEXIS* 391 (Sept. 21, 2011).................................. 5, 10

**STATE STATUTES**

California Penal Code
  section 12025 ..........................................................................................................7
  section 12026 ..........................................................................................................7
  section 12031(j)(1)..................................................................................................7
  section 12031(h).....................................................................................................7
  section 12031(l)......................................................................................................7
  section 12031(g).....................................................................................................7
  section 12031 .........................................................................................................7
  section 12031(k).....................................................................................................7
  section 12050 ................................................................................................. 5, 7, 9
  section 25850 .........................................................................................................8
  section 26045(a) .................................................................................................2, 8
  section 26350 ..................................................................................................... 7, 8
  section 26362 .........................................................................................................8
  section 26389 .........................................................................................................8

**RULES**

Federal Rules of Civil Procedure
  Rule 26(f) ............................................................................................................. 14

**OTHER AUTHORITIES**

Birdt v. Beck,
  2:10-CV-08377-JAK-JEM............................................................................ 2, 13, 14

Schwarzer, Tashima, & Wagstaffe, Cal. Practice Guide: Federal Procedure
  Before Trial (The Rutter Group 2011) 1:15.........................................................2

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-iii-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Robert Thomson ("Plaintiff") asserts that the "sole issue" in his motion for summary judgment as it relates to Defendant Torrance Police Department ("TPD") is whether the TPD policy for issuing permits to carry a concealed weapon ("CCW") violates his Second Amendment rights. (Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), 2:11-15.) Plaintiff's argument that it does is based on three erroneous legal assumptions:

1. There is a fundamental constitutional right to carry a concealed, loaded handgun in public.
2. A CCW permit is the only mechanism in California by which a person can exercise his right to bear arms outside of the home.
3. The TPD cannot condition Plaintiff's right to carry a concealed weapon on the grant of a license that officials have discretion to withhold.

The fallaciousness of these assumptions dooms Plaintiff's argument. First, as described in Torrance Police Department's ("TPD") previously-filed Motion for Summary Judgment ("TPD's Motion"), Plaintiff does not have a fundamental constitutional right to carry a concealed, loaded handgun in public. (TPD's Motion, § V(A).) In District of Columbia v. Heller (2008) 554 U.S. 570, 626-27, 128 S.Ct. 2783, 2816-2817, 1171 L.Ed.2d 637, the United States Supreme Court merely held that the Second Amendment allows law-abiding, responsible citizens to use arms in defense of hearth and home. (554 U.S. at 635.) No case has ever held that there is a fundamental right to carry a concealed, loaded handgun in public.

Second, Plaintiff misrepresents the open-carry laws in California. The law at the time of the denial of Plaintiff's application in April 2011 is the law that is relevant for this motion. Plaintiff does not dispute that the legislative scheme at that time allowed Plaintiff to open-carry an unloaded handgun without a CCW permit. Even now, after AB 144 became effective on January 1, 2012, Plaintiff can still legally possess a firearm outside of his home in a variety of situations without a

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-1-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

1  CCW permit. (TPD Motion, 5:11-21.) Most pertinent to Plaintiff's assertions here,
2  Plaintiff can carry a firearm in public if he is in "immediate, grave danger and the
3  firearm is needed for his self-defense." (Cal. Pen. Code § 26045(a).)

4  Finally, Plaintiff's claim that his rights were infringed because the TPD had
5  the discretionary power to withhold a CCW license is specious for three reasons:
6  Plaintiff does not have a fundamental right to carry a concealed weapon in public;
7  Plaintiff has never asserted that the TPD abused its discretion in denying Plaintiff's
8  application here; and the authority Plaintiff relies on to support his argument is
9  inapposite.

10 It is also significant to this case that on January 13, 2012, District Court Judge
11 John A. Kronstadt, in the case of Birdt v. Beck, 2:10-CV-08377-JAK-JEM, granted
12 summary judgment against plaintiff Birdt, counsel for Plaintiff in the case at bar,
13 and for defendants the Los Angeles County Sheriff's Department ("LASD") and the
14 Los Angeles Police Department in an action challenging those agencies' CCW
15 policies. (A copy of the Court's order is attached as Exhibit "A" to the Declaration
16 of Ajit Singh Thind ["Thind Decl."].)[1] The Birdt case involved the same issues as
17 the case at bar. The Kronstadt Order holds that the agencies' CCW policies do not
18 violate the Second Amendment:

19 > "Because the LAPD and LACSD policies, as implementing the
20 > California concealed weapons regime and as applied to Plaintiff,
21 > satisfy intermediate scrutiny, they do not violate the Second
22 > Amendment. There has been no violation of Plaintiff's constitutional
23 > rights, and no resulting violation of 42 U.S.C. §§ 1983 and 1988."

24 (Thind Decl., Ex. A, Kronstadt Order, p. 9.)

25 Because TPD's CCW policy is virtually the same as LASD's, and Plaintiff

---

[1] "Unless prohibited by local rule, *all* federal district court rulings and opinions [issued on or after 1/1/07] – whether or not published – may be cited as precedent." (Schwarzer, Tashima, & Wagstaffe, Cal. Practice Guide: Federal Procedure Before Trial (The Rutter Group 2011) 1:15, p. 1-4 (emphasis in original).)

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-2-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

has agreed that the Kronstadt Order should provide guidance in this action, it is respectfully submitted that Plaintiff's Motion should be denied.

## II. STATEMENT OF FACTS

The factual background of this case is set forth in Section IV of TPD's Motion. To summarize, Plaintiff, a Bail Agent, twice applied for a CCW permit from TPD and was denied both times, the most recent denial coming on April 5, 2011. Significantly, in both of his applications, Plaintiff admitted that:

- he had never been threatened within the jurisdiction of the TPD;
- he had no security concerns within the jurisdiction of the TPD;
- he had never been physically assaulted or robbed during the course of his employment in any jurisdiction;
- he had never had to file a report with any police agency regarding threats made against him or his family;
- he evaluates every bail bond with safety in mind, and if he believes there is any type of risk, he refuses to take the case; and
- his concerns were with the "unforeseen" and "what ifs" that went along with his job. (TPD's Statement of Undisputed Fact ("SUF"), ¶ 8, Ex. B, pp. 10-11, 29; Ex. C, pp. 56-57, 73.)

Thus, Plaintiff's application was denied because Plaintiff was not subject to any specific, credible threats; there was no showing that local law enforcement resources were insufficient to deal with any threats that might arise; and Plaintiff had viable alternative means of self-defense available. Therefore Plaintiff did not have sufficient "good cause" under TPD's CCW Policy. (SUF, ¶ 7.)

## III. ARGUMENT

### A. The Second Amendment Does Not Create A Fundamental Right To Carry A Concealed Handgun In Public

As described in Section V(A) of TPD's Motion, there is no fundamental right to carry a concealed handgun in public, let alone a loaded handgun.

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-3-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

In <u>Heller</u>, the Supreme Court struck down as a violation of the Second Amendment certain statutes which totally banned the possession of handguns, and required any other lawful firearms in the home to be kept inoperable. The Court concluded that the core purpose of the right conferred by the Second Amendment was an individual right, as opposed to a collective protection of state militias. The Court's holding, however, was quite narrow - it allowed "law-abiding, responsible citizens to use arms **in defense of hearth and home**" (554 U.S. at 635 (emphasis added)), "where the need for defense of self, family, and property is most acute" (<u>id.</u> at 628). Indeed, the Court limited its holding as follows: "[W]e hold that the District's ban on handgun possession **in the home** violates the Second Amendment, as does its prohibition against rendering any lawful firearm **in the home** operable for the purpose of immediate self-defense." (<u>Id.</u> at 635 (emphasis added).)

Moreover, the <u>Heller</u> Court identified limitations on the right secured by the Second Amendment, explicitly stating that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." (554 U.S. at 626.) Various cases have read this limiting language as **removing modern-day concealed carry regulations from the ambit of Second Amendment protection**. For example, the district court in <u>Dorr v. Weber</u> (N.D. Iowa) 741 F.Supp.2d 993, observed that <u>Heller's</u> limiting language makes clear that the Supreme Court did not disturb its prior ruling in <u>Robertson v. Baldwin</u> (1897) 165 U.S. 275, 17 S.Ct. 326, 41 L. Ed. 715, where it "recognized that the Second Amendment right to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons." (<u>Dorr</u>, 741 F.Supp.2d at 1005.) The <u>Dorr</u> court observed that the plaintiffs in that case failed to "direct[] the court's attention to any contrary authority recognizing a right to carry a concealed weapon under the Second Amendment and the court's own research efforts . . . revealed none." (<u>Id.</u>) Accordingly, it concluded, "a right to carry a concealed weapon under the Second Amendment has not been recognized to

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-4-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

date." (Id.) (See also People v. Flores (2008) 169 Cal.App.4th 568, 575, 86 Cal.Rptr.3d 804, 808, review denied 2009 Cal. *LEXIS* 2979 (Mar. 18, 2009) [citing Robertson and Heller in holding that, "[g]iven this implicit approval [in *Heller*] of concealed firearm prohibitions, we cannot read *Heller* to have altered the courts' longstanding understanding that such prohibitions are constitutional"]; United States v. Hart (D. Mass. 2010) 726 F.Supp.2d 56, 60 ["*Heller* does not hold, nor even suggest, that concealed weapons laws are unconstitutional. . . . Therefore, it was not a violation of [defendant's] Second Amendment rights to stop him on the basis of the suspicion of a concealed weapon"]; Swait v. Univ. of Neb. (D. Neb. 2008) 2008 U.S. Dist. *LEXIS* 96665, 2008 WL 5083245, at *3 ["[S]tates can prohibit the carrying of a concealed weapon without violating the Second Amendment"]; United States v. Hall (S.D. W.Va. 2008) 2008 U.S. Dist. *LEXIS* 59641, 2008 WL 3097558, at *1 ["the prohibition . . . on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment"]; State v. Knight (Kan. Ct. App. 2009) 44 Kan.App.2d 666, 685-686, 241 P.3d 120, , review denied 2011 Kan. *LEXIS* 391 (Sept. 21, 2011) [*Heller* analysis "clearly shows that the *Heller* Court considered concealed firearms prohibitions to be presumptively constitutional under the Second Amendment."].) (Kachalsky v. Cacace (S.D. N.Y. 2011) 2011 U.S. Dist. *LEXIS* 99837, *66-*68.)

      Similarly, in Richards v. County of Yolo (E.D. Cal. 2011) 2011 U.S. Dist. *LEXIS* 51906, plaintiffs sued when they were denied CCW licenses under California Penal Code section 12050, asserting as Plaintiff does here, that the county's interpretation of good cause infringed on their Second Amendment rights. (Id. at *3, 4.) After reviewing Heller, the court held that the Second Amendment "does not create a fundamental right to carry a concealed weapon in public." (Id. at *10.) The court noted that the county's policy, like TPD's CCW Policy in the case at bar, did not "create a total ban on carrying a firearm, such that the policy completely

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-5-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

infringes on the rights protected by the Second Amendment." (Id.)

Plaintiff asserts here that Heller created a broader Second Amendment right based on the Court's textual analysis of the phrase "keep and bear arms," where the Court stated that the phrase should be read as meaning "'wear, bear, or **carry** . . . upon the person . . . for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'" (Heller, 554 U.S. at 584 (emph. added).) Plaintiff is incorrect. As stated in Kachalsky:

> "**This textual interpretation does not stand on its own**, however, but rather appears within the context of, and **is provided solely to support, the Court's holding that the Second Amendment gives rise to an individual right, rather than a collective right connected to service in a militia. . . . Nor does this textual interpretation somehow expand the Court's holding, as such a reading overlooks the opinion's pervasive limiting language discussed above.** See, e.g., People v. Dawson, 403 Ill. App3d 499, 934 N.E.2d 598, 605, 343 Ill. Dec. 274 (Ill. App. Ct. 2010) ('The specific limitations in Heller and McDonald applying only to a ban on handgun possession **in a home** cannot be overcome by defendant's pointing to the Heller majority's discussion of the natural meaning of "bear arms" including wearing or carrying upon the person or in clothing.'), . . ."

(Kachalsky, 2011 U.S. Dist. LEXIS 99837, *70-*71 (emphasis added).)

Thus, Plaintiff's claim that he has a fundamental right to publically carry a concealed weapon for self-defense has been overwhelmingly rejected by the courts.

B.  The California Legislative Scheme Does Not Require A CCW Permit To Carry A Firearm For Self-Defense

Nor is Plaintiff correct in his unqualified assertion that he is precluded from carrying a loaded handgun in public without a CCW permit. When the TPD denied Plaintiff's application in April 2011 (which is the only relevant timeframe for

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-6-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

purposes of this case), there were a number of avenues, described more thoroughly in Section III of TPD's Motion, that enabled Plaintiff to carry a handgun for self-defense without a CCW permit. Although the statutory scheme in California governing firearms underwent certain changes effective January 1, 2012, alternative avenues for carrying a handgun for self-defense without a CCW permit still exist.

At the time his CCW application was denied in April of 2011, there were four different ways that Plaintiff could carry a handgun in self-defense. He could:

1. Open-carry or carry concealed a loaded weapon at his place of business and in his home (Cal. Pen. Code §§ 12026, 12031(h), (l));

2. Open-carry a loaded weapon while making a lawful arrest (§ 12031(k));

3. Open-carry a loaded weapon if he believed he was in immediate, grave danger and the firearm was needed for his self-defense (§ 12031(j)(1); see Peruta v. San Diego County (S.D. Cal. 2010) 758 F.Supp.2d 1106, 1114-1115 ["to the extent that Penal Code sections 12025 and 12050 and Defendant's [good cause] policy burden conduct falling within the scope of the Second Amendment, if at all, the burden is mitigated by the provisions of section 12031 that expressly permit loaded open carry for immediate self-defense"]); and

4. Open-carry an unloaded firearm and ammunition ready for instant loading (Peruta, 758 F.Supp.2d at 1114 [citing Cal. Pen. Code § 12031(g)]).

The recent amendments added California Penal Code section 26350, which Plaintiff erroneously argues negates the TPD's arguments regarding alternative avenues for carrying a firearm. Even if section 26350 is considered, which it should not be because it was not effective until 8 months *after* the City's decision, it avails Plaintiff nothing, as the new legislation changes very little with regard to the alternative means of self-defense that existed when the TPD made its decision.

First, section 26350 concerns only alternative 4 above (i.e., it prohibits the unqualified open-carry of unloaded handguns). It does **not** prohibit alternatives 1 -

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-7-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

3 (carrying a loaded weapon at home or at one's place of business, or the open-carry of a firearm while making an arrest or if in immediate danger). Nor does section 26350 apply to the carrying of an unloaded handgun if it is carried in the locked trunk of a vehicle or elsewhere "in a locked container." (Cal. Pen. Code § 26389.)

Second, even with regard to alternative 4, the new legislation expressly provides that section 26350's prohibitions against open carry do **not** apply to "the open carrying of an unloaded handgun by any person to the extent that person may openly carry a loaded handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3." (Cal. Pen. Code § 26362.) In turn, Article 4 includes section 26045, which states that the prohibitions against the open carrying of loaded firearms (Cal. Pen. Code § 25850) do **not** apply to persons who believe they are in immediate, grave danger, and the firearm is needed for their self-defense. (Cal. Pen. Code § 26045(a).) Thus, beginning in 2012, the open carrying of handguns, loaded or unloaded, will still be permitted for immediate self-defense purposes, along with dozens of other legitimate exceptions. Thus, numerous avenues still exist for a Californian to carry a handgun for self-defense.

### C. The Fact That TPD Has Discretion To Deny Applications For A CCW License Does Not Violate The Constitution

Plaintiff also claims the fundamental right to carry a concealed weapon in public is infringed because the TPD has the discretionary power to withhold a CCW license. Plaintiff's claim should be rejected because: (i) as shown above, there is no fundamental right to carry a concealed weapon in public; (ii) Plaintiff has never alleged that the TPD abused its discretion in denying his application here; and (iii) even if there were a fundamental right to carry a concealed weapon, the authorities Plaintiff relies on do not support his argument.

First, as stated above, no case has ever held that a person has a fundamental right to carry a concealed weapon in public.

Second, Plaintiff does not challenge the specific manner in which the TPD's

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-8-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

good cause policy was applied to him or a particular instance of the policy's application. That is, Plaintiff does not allege the TPD abused its discretion in finding Plaintiff lacked good cause for a CCW permit. Plaintiff's argument is based solely on the premise that the good cause requirement set forth in California Penal Code section 12050 **on its face** gives issuing authorities too much discretion. Plaintiff's claim is therefore a facial challenge. (See Jerry Beeman and Pharmacy v. Anthem Prescription (9th Cir. 2011) 652 F.3d 1085, 1097.) A facial challenge presents a "heavy" burden, and is the "most difficult challenge to mount successfully." (Id. (citations omitted).) In order to succeed on a facial challenge, Plaintiff must show that no set of circumstances exists under which the policy would be valid. (Id.) Because Plaintiff has failed to carry that burden, his claim fails as a matter of law.

Finally, Plaintiff relies on authorities that do not support his argument. Specifically, for reasons that are unclear, Plaintiff cites People v. Delacy (2011) 192 Cal.App.4th 1481, 122 Cal.Rptr.3d 216, review denied 2011 Cal. *LEXIS* 5086. (June 8, 2011). (Plaintiff's Motion, 5:7-18.) Delacy, however, supports the TPD's position rather than Plaintiff's. There, defendant challenged his conviction for unlawful possession of firearms based on his previous conviction for misdemeanor battery, claiming the Legislature could not so limit his rights under the Second Amendment. The court found no reason the government could not prohibit firearm possession by misdemeanants who have shown a propensity to commit violence. Significantly, the court rejected a claim that it should apply "means-ends" scrutiny to the statute (192 Cal.App.4th at 1491-1492), even though the firearms were discovered **in defendant's home** (*id.* at 1486). Instead, the court held that firearm regulations that were found by Heller to be "presumptively valid," such as those precluding possession by felons, were **immune from challenge** because they were within Heller's "safe harbor" for firearms' laws. (*Id.* at 1491, 1492, n. 7.) Here the TPD's regulations regarding concealed weapons are similarly within Heller's safe

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-9-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

harbor because they are presumptively valid (State v. Knight, 44 Kan.App.2d at 685-686), and thus immune from challenge.

Plaintiff also cites Cantwell v. Connecticut (1940) 310 U.S. 296, 60 S.Ct. 900, 84 L. Ed. 1213; Staub v. Baxley (1958) 355 U.S. 313, 78 S.Ct. 277, 2 L. Ed.2d 302; and Comite de Jornaleros de Redondo Beach v. City of Redondo Beach (9th Cir. 2011) 657 F.3d 936, for the proposition that the TPD cannot condition Plaintiff's right to engage in constitutionally protected conduct on the grant of a license that officials have discretion to withhold. (Plaintiff's Motion, 5-6.) Those cases, however, have nothing to do with the Second Amendment; instead, they are "prior restraint" cases based on the First Amendment's right to free speech, which is undeniably a fundamental constitutional right. Those cases are inapposite to a Second Amendment claim, where fundamental constitutional rights are not involved.

As recognized in Kachalsky v. Cacace, most circuit courts have adopted a variable approach to Second Amendment cases, whereby the level of scrutiny to be applied is determined on a case-by-case basis depending on the proximity of the right burdened to the core Second Amendment right recognized in Heller. (Kachalsky, 2011 U.S. Dist. *LEXIS* 99837, *82-*83.) Although this approach may be borrowed from First Amendment jurisprudence, it does not mean the Court here should import the First Amendment principle of "prior restraint" and apply it to strike down TPD's good cause policy. (*Id.* at *86-*87, n. 32.) "While these cases borrow an *analytical framework*, they do not apply *substantive* First Amendment rules in the Second Amendment context. . . ." (*Id.* at *87, n. 32.)[2]

---

[2] Even in the **First Amendment** context, the judicial scrutiny that applies varies. "Strict scrutiny is triggered by content-based restrictions on speech in a public forum, but content-neutral time, place, and manner restrictions in a public forum trigger a form of intermediate scrutiny. Regulations on nonmisleading commercial speech trigger another form of intermediate scrutiny, whereas disclosure requirements for commercial speech trigger a rational basis test. In sum, the right to free speech, an undeniably enumerated fundamental right, is susceptible to several standards of scrutiny, depending upon the type of law challenged and the type of

Rutan & Tucker, LLP
attorneys at law
2465/062579-0097
2859800.3 a02/03/12
-10-
Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

1  The lesson to take from these cases is that the Court should apply the "safe
2  harbor" immunity afforded to the TPD policy under Heller. Intermediate scrutiny
3  would come into play only in cases in which the challenged regulation implicates
4  the core Second Amendment right discussed in Heller, namely the right to use arms
5  in the defense of hearth and home. That core right is not implicated by the TPD's
6  policy here. However, even if the Court applies intermediate scrutiny, TPD's "good
7  cause" policy passes muster, as restricting handguns to those who have established
8  good cause would substantially relate to the government's strong interest in public
9  safety and crime prevention. (Kachalsky, 2011 U.S. Dist. *LEXIS* 99837, *86-*87, n.
10  32.) Moreover, while the TPD has discretion in deciding whether to grant CCW
11  permits, that discretion is not "unbridled;" instead, it is constrained by the definition
12  of the term "good cause" in the TPD policy, as well as "arbitrary and capricious"
13  review.

14  Finally, it cannot be disputed that a license is not necessary to carry firearms
15  (i) in the home or at one's place of business, or (ii) in public for immediate self-
16  defense. Thus, Plaintiff has multiple avenues of self-defense available absent a
17  CCW permit, which completely refutes his argument.

18      D.    <u>The TPD's Policy Promotes Important Government Objectives</u>

19  TPD's Motion discusses the important policy interests implicated with CCW
20  permits. (TPD Motion, § V(C).) TPD's Motion included the declaration of Chief of
21  Police John Neu, attesting to the governmental objectives that are reflected in the
22  TPD's Good Cause Policy, including public safety, reducing crime, and officer
23  safety. (Neu Decl., ¶¶ 3-4.) Those arguments are incorporated herein.

24  Moreover, the TPD now also submits for the Court's consideration the
25  Declaration of Franklin E. Zimring ("Zimring Decl."), which was previously filed
26  herein by LASD with its Motion for Summary Judgment. (A copy of the Zimring

27  _____
28  speech at issue." (United States v. Marzzarella (3rd. Cir. 2010) 614 F.3d 85, 96-97, *cert.* denied 131 S. Ct. 958, 178 L.ed. 2d 790 (2011))

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-11-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

Decl. is attached as Exhibit B to the Thind Decl.) Professor Zimring discusses the significant governmental interests in limiting the number of concealed weapons in public, as well as particular crime statistics relevant to Los Angeles County, wherein the City of Torrance is located. In particular, Zimring finds, among other things, that concealed handguns are a special problem for police and unarmed citizens. (Thind Decl., Ex. B, Zimring Decl., ¶¶ 9, 18.) He also finds that:

> "Because California does not restrict **the eligibility** of most citizens to own handguns or **the volume** of handguns owned, the state's first line of defense against the use of such weapons in street crime is a series of restrictions on the **time, place and manner of handgun use**. . . . The goal [of CCW permits] is to distinguish uses of handguns that **do not pose a special threat to the public** (such as storage and use **in the owner's home**) from uses that **pose greater threats to public safety** (such as carrying of concealed weapons **in streets and public places**) . . . California's emphasis on **controlling this risky use of guns rather than restricting ownership** itself is exactly opposite to the policy formerly pursued by Washington, D.C. and disapproved in the *Heller* decision in 2008."

(Id. at ¶¶ 9, 10 (emphasis added).)

Thus, the TPD has compelling interests in limiting the availability of CCW licenses to only those with sufficient good cause, and under any scrutiny, the TPD has the requisite interests to justify its CCW Policy.

E. The Order in Birdt v. Beck Is On Point

In 2010, Jonathan Birdt ("Birdt"), counsel for Plaintiff in this matter, applied for a CCW permit from both LASD and LAPD, which applications were denied based on Birdt's failure to establish good cause for the permits. (Thind Decl., Ex. A, Kronstadt Order, pp. 2-3.) Birdt filed a complaint in this court, alleging that LASD's and LAPD's good cause policies violated his Second Amendment rights.

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-12-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

(Id. at p. 1.) On January 13, 2012, the court issued its order, denying Birdt's motion for summary judgment and granting judgment in favor of LASD and LAPD.

As with TPD's CCW Policy, both LASD and LAPD required the applicant to show "a clear and present danger to the applicant," which could not be dealt with through law enforcement or alternative measures. (Thind Decl., Ex. A, Kronstadt Order, p. 2.) Like TPD's CCW Policy, both LASD's and LAPD's policies also stated that a "general fear" for one's safety was not adequate to make this showing. (Id.)

The court in the Birdt case thoroughly discussed the current status of Second Amendment law and found that strict scrutiny was inapplicable to the policies since they did not "infringe on the 'core' Second Amendment right of self-defense within the home." (Thind Decl., Ex. A, Kronstadt Order, p. 5.) The Court thereafter noted that it need not decide whether rational basis or intermediate scrutiny was needed, because the policies satisfied both tests. (Id.) Citing Heller, the Court then found that the respective policies of LAPD and LASD were valid:

> "Because the Supreme Court suggested that long-standing prohibitions on carrying concealed weapons would be constitutional, *id.* at 626, a concealed weapons law that allows exceptions tailored to the need for self-defense is certainly constitutionally sound."

(Id. at *8-9.) The Court also held that Birdt "lacked 'good cause' to receive a CCW license under the policies. (Id. at *9.)

The Birdt opinion is on "all fours" with this case, as Plaintiff asserts the same argument that was rejected there: That a good cause policy requiring a showing of clear and present danger before issuance of a CCW permit violates the Second Amendment. (Plaintiff's Motion, 6:16-19.) Plaintiff concedes that both LASD and TPD "require documentation of a Clear and Present Danger to the applicant before they will issue a CCW permit." (Plaintiff's Separate Statement of Undisputed Facts, No. 3.) Plaintiff's admission that there are no factual differences between LASD's

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-13-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT

policy and TPD's policy leaves him no room to distinguish this case from the Birdt case. While the Kronstadt Order is not binding on this Court, its analysis is comprehensive and persuasive. Indeed, in the FRCP Rule 26(f) Joint Report filed in October 2011 in the case at bar, Plaintiff's counsel agreed that it would be prudent to wait for the Judge Kronstadt's ruling "to provide guidance in this action. . . ." As a result, Plaintiff's Motion should be denied.

## IV. CONCLUSION

Under the authorities cited herein: (i) There is no fundamental Second Amendment right to carry a concealed handgun in public; (ii) the open carrying of handguns in public without a CCW permit is still permitted for immediate self-defense purposes, along with dozens of other legitimate exceptions; (iii) even if the TPD Policy burdened Plaintiff's rights, it passes constitutional muster because it is substantially related to important government interests; and (iv) the Kronstadt Order validates TPD's policy by comprehensively explaining why Plaintiff's arguments are unfounded.

Because the TPD's policy is constitutionally sound, Plaintiff's Motion for summary judgment should be denied, and the TPD's motion for summary judgment should be granted.

Dated: February 6, 2012

RUTAN & TUCKER, LLP
ROBERT S. BOWER
AJIT S. THIND

By: *[signature]*
Robert S. Bower
Attorneys for Defendant
TORRANCE POLICE DEPARTMENT

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2859800.3 a02/03/12

-14-

Case No. CV11-06154 SJO (JCx)
TPD'S OPPOSITION TO THOMSON'S
MOTION FOR SUMMARY JUDGMENT