UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: CV 11-06154 SJO (JCx)        DATE: July 2, 2012

TITLE: Robert Thomson v. Torrance Police Department, et al.

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                               Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 34]; **ORDER GRANTING LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 36]; **ORDER GRANTING TORRANCE POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 38]

This matter is before the Court on Plaintiff Robert Thomson's ("Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion"), filed on December 17, 2011; Defendant Los Angeles County Sheriff's Department's ("LASD") Motion for Summary Judgment ("LASD Motion"), filed on December 23, 2011; and Defendant Torrance Police Department's ("TPD") Motion for Summary Judgment or alternatively, Motion for Partial Summary Judgment ("TPD Motion"), filed on January 3, 2012.  Plaintiff filed an Opposition ("Plaintiff's Opposition") to the LASD and TPD Motions on January 9, 2012, to which LASD filed a Reply ("LASD Reply") on February 10, 2012. LASD filed an Opposition ("LASD Opposition") to Plaintiff's Motion on January 30, 2012, and TPD filed a separate Opposition ("TPD Opposition") on February 6, 2012.  Plaintiff submitted a single Reply ("Plaintiff's Reply") to LASD's and TPD's Oppositions on February 6, 2012, and a Supplemental Reply ("Plaintiff's Supplemental Reply") on March 5, 2012.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for February 27, 2012.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **DENIES** Plaintiff's Motion, **GRANTS** LASD's Motion, and **GRANTS** TPD's Motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed.  (*See generally* LASD's Separate Statement of Undisputed Facts & Conclusions of Law ("LASD SUF"), Dec. 23, 2011, ECF No. 37; Pl.'s Separate Statement of Undisputed Facts ("Pl.'s SUF"), Dec. 17, 2011, ECF No. 34; LASD's Response to Pl.'s SUF ("Response to Pl.'s SUF"), Jan. 30, 2012, ECF No. 55; Pl.'s Opp'n 4, Jan. 9, 2012, ECF No. 46 (submitting that "Plaintiff has no objection to the Defendants [sic] material facts").)  The California gun control regulatory system requires a person to have a concealed carry weapons license ("CCW license") in order to "to possess a functional firearm for self-defense purposes outside of the home." (Pl.'s SUF ¶ 1; *see also* LASD SUF ¶¶ 5-6.)  Plaintiff applied for a CCW license with

CASE NO.: <u>CV 11-06154 SJO (JCx)</u>    DATE: <u>July 2, 2012</u>

TPD and LASD. (Pl.'s SUF ¶ 2.) In Plaintiff's application, he wrote that he was a bail agent who "sometimes ha[s] in [his] possession over $10,000 in cash" while performing his job duties at all hours of the night. (LASD SUF ¶ 18.) Plaintiff further wrote in his application: "The criminal element that I deal with presents a danger to my safety that cannot be mitigated by law enforcement resources or other means available to me." (LASD SUF ¶ 18.) Defendants denied Plaintiff a CCW license because he did not show he had good cause to possess a concealed firearm in public. (Pl.'s SUF ¶ 2; LASD SUF ¶ 19.) Defendants found that Plaintiff failed to provide convincing evidence or documentation of a sufficiently "clear and present danger" to his life, body, spouse, or dependent child. (LASD SUF ¶ 19; *see also* Pl.'s SUF ¶¶ 2-3.)

II.   <u>DISCUSSION</u>

   A.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) mandates that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c). A court is required to draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

   B.   <u>Cross-Motions for Summary Judgment</u>

Plaintiff brings suit against Defendants pursuant to 42 U.S.C. §§ 1983 and 1988. (*See generally* Second Am. Compl. ("SAC"), Nov. 22, 2011, ECF No. 26.) Plaintiff argues that Defendants denied him a CCW license in violation of the Second Amendment to the United States Constitution. (SAC ¶¶ 26-28.) He claims that these denials "leave[] him with no alternative means of exercising his Fundamental Constitutional Right to possess a Functional Firearm for the purposes of Self Defense." (SAC ¶ 28.)

Plaintiff's Motion asserts that "there is a constitutional fundamental right to carry firearms in places which are not 'sensitive' for the purpose of self-defense." (Pl.'s Mot. 4, Dec. 17, 2011, ECF No. 34.) Plaintiff contends that LASD and TPD officials "may not condition a license necessary to engage in constitutionally protected conduct on the grant of a license officials have *discretion to withhold*." (Pl.'s Mot. 5.) Plaintiff adds that the enjoyment of constitutionally guaranteed freedoms cannot be contingent upon the "uncontrolled will of an official." (Pl.'s Mot. 5 (internal quotation marks omitted).)

LASD's Motion claims that "there is no constitutional right to carry a loaded concealed weapon in public under the Second Amendment," and that California's laws do not "regulate the possession of a gun in the home for lawful purposes of confrontation or self-defense." (LASD Mot. 9, 12, Dec.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 11-06154 SJO (JCx)    DATE: July 2, 2012

23, 2011, ECF No. 36.) LASD argues that even if a constitutional right to carry a loaded concealed weapon in public exists, LASD's CCW licensing policy passes constitutional muster under intermediate scrutiny and was "constitutionally applied to Plaintiff." (LASD Mot. 13-17.) TPD argues essentially the same points in its Motion.[1] (*See generally* TPD Mot., Jan. 3, 2012, ECF No. 39.)

In Plaintiff's Opposition, he argues that the Second Amendment confers a right to "bear arms outside the home," and that Defendants restricted that right without showing a nexus between their licensing policies and "any State interest." (Pl.'s Opp'n 5-7.) Plaintiff also claims that the issuing of CCW licenses actually "reduc[es] crime and injury." (Pl.'s Opp'n 7.) Plaintiff also argues that Defendants' licensing schemes constitute an impermissible prior restraint against the exercise of Plaintiff's fundamental right to carry a loaded firearm for self-defense purposes. The LASD Opposition essentially reiterates the arguments from the LASD Motion. (*See generally* LASD Opp'n, Jan. 30, 2012, ECF No. 54.) The TPD Opposition also reiterates many of the arguments from the TPD Motion, but also cites multiple cases and penal codes to show that Plaintiff - even without a CCW license - is not completely precluded from carrying a weapon in self-defense. (TPD Opp'n 6-8, Feb. 6, 2012, ECF No. 56.) TPD also urges the Court to reject Plaintiff's attempt to "import the First Amendment principle of 'prior restraint'" into Second Amendment jurisprudence. (TPD Opp'n 9-10.)

  C.  California's Licensing Laws

California Penal Code ("Code") section 12025 prohibits the carrying of concealed firearms, and section 12031 prohibits the general carrying of loaded firearms in public. Cal. Penal Code §§ 12025 (2011), 12031 (2010). A CCW license allows a person to "to carry a pistol, revolver, or other firearm capable of being concealed upon the person."[2] *See id.* § 12050(a)(1)(A) (2010). Section 12050 sets forth an application process that allows the sheriff of a county to issue such a license "upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies" other statutory requirements. *Id.* § 12050(a)(1)(A). Section 12050 gives "extremely broad discretion to the sheriff concerning the issuance of concealed weapons licenses and explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." *Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801, 805 (2001) (internal quotation marks omitted).

---

[1] The Court will treat LASD's and TPD's Motions as one for purposes of the instant order. Indeed, Plaintiff filed only one Opposition to both Defendants' Motions. (*See generally* Pl.'s Opp'n, Jan. 9, 2012, ECF No. 46.)

[2] Section 12050, which the Court cites throughout the order, was in effect from January 1, 2010 to December 31, 2011 - the time period during which TPD and LASD denied Plaintiff's applications for a CCW license. Under the Deadly Weapons Recodification Act of 2010, effective January 1, 2012, the statutes were recodified in the new Part 6 of the Code (entitled "Control of Deadly Weapons"), commencing with section 16000. *See generally* Cal. Penal Code § 16000, *et seq.* (2012).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-06154 SJO (JCx)  **DATE:** July 2, 2012

LASD and TPD (collectively, "Defendants") have each set forth definitions of "good cause" that they use to evaluate CCW license applications. *See* Cal. Penal Code § 12050(a)(1)(A). The parties have focused their arguments on the constitutionality of the "good cause" definitions promulgated by LASD and TPD. (*See* Joint Report ¶ 3, Oct. 7, 2011, ECF No. 16; Pl.'s Mot. 1.) LASD defines "good cause" as requiring an applicant to show:

> convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

(LASD SUF ¶ 7.) Under LASD's policy, an applicant cannot show good cause merely by stating that a license is necessary for self-defense purposes. (LASD SUF ¶ 9.) "The applicant must demonstrate a credible threat of violence which would justify the need to possess a concealed weapon. If an applicant claims that he or she has been threatened, the LASD looks for documentation of that threat, such as police reports or other evidence." (LASD SUF ¶ 10.)

Under TPD's definition:

> To establish good cause, an applicant must demonstrate more than a "generalized fear" for one's personal safety. Rather, the applicant must document that:
> (i) the applicant is dealing with circumstances that distinguish the applicant from other members of the public, in that there is a clear, present, and documented danger to the applicant[;] and
> (ii) there are no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property.

(Decl. of John Neu in Supp. of TPD Mot. ("Neu Decl.") Ex. A, at 4, Jan. 3, 2012, ECF No. 41.)

Plaintiff argues that Defendants' respective interpretations of "good cause" violate the Second and Fourteenth Amendments. (SAC ¶ 26.) Plaintiff contends that by requiring CCW license applicants to show proof of a clear and present danger, LASD and TPD have violated the Second Amendment. (Pl.'s Mot. 6 ("[D]efendants [sic] pre-condition of documentation of a Clear and Present Danger before granting permission to exercise a Fundamental Right does not pass Constitutional Scrutiny and Violates Plaintiffs [sic] Rights under the Second Amendment."). Plaintiff claims that under California law, the CCW license is the only way to "bear a functional firearm for self-defense." (Pl.'s Mot. 6.) Plaintiff argues that, under Supreme Court precedent,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-06154 SJO (JCx)        **DATE:** July 2, 2012

LASD's and TPD's definitions of good cause violate the Second Amendment because they are "tantamount to a ban on concealed weapon permits absent a 'Clear and Present Danger.'" (Pl.'s Mot. 3.)

       D.     The Second Amendment

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he Second Amendment conferred an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). In *Heller*, the Supreme Court held:

> [W]e find that [the Second Amendment's textual elements] guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.

*Id.* at 592. After an extended examination of the Second Amendment's historical background, the Supreme Court ruled that it was unconstitutional to require firearms in the home to be rendered and kept inoperable at all times because such a requirement "makes it impossible for citizens to use them for the core lawful purpose of self-defense." *Id.* at 630. "[The Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. "[T]he Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald v. City of Chicago*, --- U.S. ----, 130 S. Ct. 3020, 3044 (2010). "[T]he Second Amendment right is fully applicable to the States" through the Fourteenth Amendment. *Id.* at 3026.

"Like most rights, the right secured by the Second Amendment is not unlimited. . . . [T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. "For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* Because the Second Amendment codified an already-existing right, consideration of this historical background is especially important when determining the Second Amendment's meaning and parameters. *See id.* at 592.

       1.     Level of Scrutiny

When examining a law's constitutionality, there are traditionally three levels of scrutiny. First, the rational basis test presumes the law is valid and only inquires into whether the law is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Second, "[t]o withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-06154 SJO (JCx)**          **DATE:   July 2, 2012**

(1988); see also *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). Lastly, strict scrutiny - the highest standard of review - "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Fed. Election Comm'n*, --- U.S. ----, 130 S. Ct. 876, 898 (2010) (internal quotation marks omitted).

The Supreme Court has declined to employ the rational basis test in the Second Amendment context. *Heller*, 554 U.S. at 628 n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."). However, the Court has not explicated a specific level of constitutional scrutiny to be employed by the courts in reviewing constitutionality under the Second Amendment.

Since *Heller*, the circuit courts have attempted to determine an appropriate level of scrutiny. Though the Ninth Circuit has not addressed this issue, other circuit courts have offered instructive guidance. In *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010), the Fourth Circuit held that there is no "one-size-fits-all" standard of review: "the level of scrutiny we apply depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Id.* at 682. The Fourth Circuit held:

> The Second Amendment is no more susceptible to a one-size-fits-all standard of review than any other constitutional right. Gun-control regulations impose varying degrees of burden on Second Amendment rights, and individual assertions of the right will come in many forms. A severe burden on the core Second Amendment right of armed self-defense should require strong justification. But less severe burdens on the right, laws that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified.

*Id.* (quoting *United States v. Skoien*, 587 F.3d 803, 813-14 (7th Cir. 2009)). The Second Amendment protects the core right of armed self-defense by the law-abiding citizen in the home. *Heller*, 554 U.S. at 635 ("And whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.").

In another Fourth Circuit case, *United States v. Masciandaro*, 638 F.3d 458, (4th Cir. 2011), the court stated:

> As we observe that any law regulating the content of speech is subject to strict scrutiny, we assume that any law that would burden the fundamental, core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny. But, as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in

> self-defense. Since historical meaning enjoys a privileged interpretative role in the Second Amendment context, this longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable.

*Id.* at 470 (internal quotation marks omitted).

Plaintiff's asserted right falls outside the scope of the Second Amendment's core protection - the armed self-defense of a law-abiding citizen in the home. *See Heller*, 554 U.S. at 635; *Masciandaro*, 638 F.3d at 470-71. The LASD and TPD licensing policies that Plaintiff challenges involve gun possession outside the home. (*See* Pl.'s Mot. 1-2.) Plaintiff's contention - that "the only way [under California law] to bear a functional firearm for self-defense is with a CCW permit" - is simply false. (*See* Pl.'s Mot. 6; Pl.'s Opp'n 3.) The LASD and TPD policies do not hinder Plaintiff's enjoyment of the Second Amendment's core protection; he still has the right to "use arms in defense of hearth and home." *See Heller*, 554 U.S. at 635. Yet Plaintiff seeks to extend that right beyond the home and into the public sphere. *Id.* at 626.

The Court will not unnecessarily decide the constitutional issue of whether and to what extent there is a right to carry a weapon outside the home. The Court need not decide whether the Second Amendment encompasses a right to carry a loaded handgun in public because "[i]f it exists, the right to carry a loaded handgun in public cannot be subject to a more rigorous level of judicial scrutiny than the 'core right' to possess firearms in the home for self-defense." *See Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1116 (S.D. Cal. 2010). Assuming *arguendo* that there is a Second Amendment right to carry a weapon outside the home, that right triggers a level of constitutional review below strict scrutiny - intermediate scrutiny or rational basis review.

Because Plaintiff's claim does not invoke the Second Amendment's core protection, the Court reviews the LASD and TPD policies under intermediate scrutiny.[3] *See Heller*, 554 U.S. at 635; *Masciandaro*, 638 F.3d at 470-71; *Peruta*, 758 F. Supp. 2d at 1116 n.9 ("[T]he Court is not aware of a case in which a court has employed any form of heightened scrutiny of regulations that do not affect the 'core right.'"); *see, e.g.*, *Masciandaro*, 638 F.3d at 471 ("[W]e conclude that a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home. Accordingly, we hold that [the law] will survive [a party's] challenge if it satisfies intermediate scrutiny . . . ."); *Chester*, 628 F.3d at 682-83 (4th Cir. 2010) (applying intermediate

---

[3] The Court decides only that the appropriate level of scrutiny is something less than strict scrutiny and assumes without deciding that intermediate scrutiny applies to the claims at issue in this case. Because, as discussed *infra*, the Court finds that LASD's and TPD's policies pass constitutional muster under heightened scrutiny, the Court need not address the specific level of scrutiny that should apply to non-core Second Amendment rights, if such rights exist at all. As such, this Order does not speak to the propriety of applying intermediate scrutiny or rational basis review to similar Second Amendment challenges.

scrutiny when the applicant was a misdemeanant and the asserted right fell outside the scope of the Second Amendment's core right).

Other circuit courts have also applied intermediate scrutiny to gun control laws. *See, e.g.*, *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) ("We think it sufficient to conclude . . . that a categorical ban on gun ownership by a class of individuals must be supported by some form of strong showing, necessitating a substantial relationship between the restriction and an important governmental objective." (internal quotation marks omitted)); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to a gun control law that "prohibit[s] the possession of firearms by narrow classes of persons who, based on their past behavior, are more likely to engage in domestic violence"); *United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir. 2010) ("Regulations of the manner in which that speech takes place, however, receive intermediate scrutiny, under the time, place, and manner doctrine. Accordingly, we think [the firearm sale law] also should merit intermediate, rather than strict, scrutiny." (citation omitted)).

  2. <u>Applying Intermediate Scrutiny</u>

To withstand intermediate scrutiny, the government must show that the law is substantially related to a significant governmental objective and that there is a "reasonable fit" between the law and the objective. *Fox*, 492 U.S. at 480 ("Here we require the government goal to be substantial, and the cost to be carefully calculated. Moreover, since the State bears the burden of justifying its restrictions, it must affirmatively establish the reasonable fit we require." (citation omitted)); *Clark*, 486 U.S. at 461. Although the standards of intermediate scrutiny "differ in precise terminology, they essentially share the same substantive requirements. They all require the asserted governmental end to be more than just legitimate, either 'significant,' 'substantial,' or 'important.' They generally require the fit between the challenged regulation and the asserted objective be reasonable, not perfect." *See Marzzarella*, 614 F.3d at 98 (citations omitted).

    a. <u>Significant Government Objective</u>

LASD states that one of the purposes of its licensing policy is to "protect against gun violence to the community at large, as well as to protect officers conducting law enforcement operations on the streets." (LASD SUF ¶ 11.) TPD asserts that the goals of its licensing policy are to "maintain public safety, prevent gun-related crime and the death of its citizens, reduce the incidence of unlawful public shootings, reduce the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations, and ensure that police officers can safely respond to dangerous situations." (Neu Decl. Ex. A, at 4.)

The government's interest in public safety goes well beyond significant - it is compelling. *See Heller*, 554 U.S. at 689; *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989). As the Supreme Court stated:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-06154 SJO (JCx)          **DATE:** July 2, 2012

> [A]lmost every gun-control regulation will seek to advance (as the one here does) a primary concern of every government - a concern for the safety and indeed the lives of its citizens. The Court has deemed that interest, as well as the Government's general interest in preventing crime, to be compelling, and the Court has in a wide variety of constitutional contexts found such public-safety concerns sufficiently forceful to justify restrictions on individual liberties.

*Heller*, 554 U.S. at 689 (internal quotation marks omitted). Because the government has a compelling interest in protecting public safety, LASD and TPD have satisfied their burden to demonstrate a significant government interest in regulating firearms.

      b.    <u>Substantial Relationship and Reasonable Fit</u>

Under intermediate scrutiny, the government must show that its policy is substantially related to a significant government interest and that there is a reasonable fit between the policy and the interest. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001); *Fox*, 492 U.S. at 480; *Clark*, 486 U.S. at 461.

LASD's and TPD's licensing policies are substantially related to the compelling government objective of protecting citizens from gun violence. The policies allow LASD and TPD to better protect the public by adequately determining who is allowed to carry a concealed weapon in public. "[U]nlike possession in the home, carrying a concealed firearm in public presents a recognized threat to public order and poses an imminent threat to public safety." *See Peruta*, 758 F. Supp. 2d at 1117 (internal quotation marks omitted). Because "[r]equiring documentation enables [the government] to effectively differentiate between individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not," Defendants' licensing policies are substantially related to a compelling government interest. *See id.*

There is also a reasonable fit between the policies and the compelling government interest of public safety. The scope of the policies' restrictions is limited and narrow. California provides multiple exceptions to its firearm prohibitions. For example, citizens can have loaded weapons in the home: "Nothing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of residence, including any temporary residence or campsite." Cal. Penal Code § 12031(*l*) (2010). There is also an exception for citizens making an arrest: "Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest." *Id.* § 12031(k). A person may also carry a loaded firearm in public when he reasonably believes he is in "immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property." *Id.* § 12031(j)(1). These exceptions prevent any sweeping prohibitions on firearm possession. Because the concealed weapons ban is narrow in scope, the fit between Defendants' policies and the interest in public safety is reasonable. The multiple exceptions also weaken Plaintiff's assertion that California only allows the use of firearms for self-defense with a CCW license. (*See* Pl.'s Mot. 6; Pl.'s Reply 2, Feb. 6, 2012, ECF No. 59.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-06154 SJO (JCx)</u>          DATE: <u>July 2, 2012</u>

Plaintiff also submitted a supporting declaration arguing that the issuance of CCW licenses reduces crime because "criminals tend to fear armed citizens more than they fear Law enforcement Officers." (Decl. of Lawrence Mudgett in Supp. of Pl.'s Mot. ("Mudgett Decl.") ¶¶ 6-8, Jan. 9, 2012, ECF No. 46; *see also* Pl.'s Opp'n 7-8.) LASD submitted its own supporting declaration arguing that concealed weapons pose a public danger and that "[r]estricting the publicly entitled carriers of concealed handguns to a tiny number also reinforces the practical monopoly of armed force by the police." (Decl. of Franklin E. Zimring in Supp. of LASD Mot. ("Zimring Decl.") ¶¶ 12-13, 18, Dec. 23, 2011, ECF No. 37.)

These two viewpoints are not contradictory, but are two sides of the same coin. Assuming that Plaintiff's declaration is accurate, Defendants' issuance of CCW licenses would indeed reduce crime because licenses would be given to only those applicants who are in clear and present danger of becoming victims of violent crimes. However, Defendants' goal of public safety would also be fulfilled because they have rigorously limited the number of people allowed to carry a concealed weapon. The scope of Defendants' licensing policies is in proportion to the interest of citizen safety because the policies focus on the specific dangers of concealed weapons in public while still permitting the exercise of Second Amendment rights and the benefits that Plaintiff claims result from the issuance of CCW licenses.

        3.    <u>LASD and TPD Policies Applied to Plaintiff</u>

According to the CCW license application documents submitted by TPD, Plaintiff applied for a CCW license twice with TPD.[4] (*See* Neu Decl. Exs. B-C.) Plaintiff's second application contains all the same information as the first plus additional assertions. (*See* Neu Decl. Exs. B-C.) When Plaintiff applied for a CCW license the second time on December 19, 2010, he wrote in his statement of good cause that he was a bail agent who periodically carries over $10,000 in cash while performing his duties in dangerous neighborhoods at all hours. (Neu Decl. Ex. C, at 69, 73.) He wrote: "I fear great bodily injury or death from an armed assailant who has the intent to steal my cash or harm me. I am a man of small stature, and work very late hours of the night." (Neu Decl. Ex. C, at 73.) During a subsequent interview with a TPD official, Plaintiff recounted an incident at a client's house where the man who answered the door was holding a firearm. (Neu Decl. Ex. C, at 56.) Plaintiff also recounted a time when he had to call the police "to help him affect [sic] an arrest on a violent subject who had a bail warrant." (Neu Decl. Ex. C, at 56.) According to the TPD official's report of the interview, Plaintiff also spoke about another time when he had to call the police because he was helping his wife - who works in real estate - change the locks on a property when the evicted tenants attacked him. (Neu Decl. Ex. C, at 56.)

---

    [4] TPD and LASD submitted Plaintiff's previous applications for a CCW license. (*See* Neu Decl. Exs. B-C; Decl. of Paul Tanaka in Supp. of LASD's Mot. ("Tanaka Decl.") Exs. 2-3, Dec. 23, 2011, ECF No. 37.) Plaintiff does not dispute the veracity of these documents. (*See generally* Pl.'s Mot.; Pl.'s Opp'n; Pl.'s Reply.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-06154 SJO (JCx)</u>     DATE: <u>July 2, 2012</u>

The TPD official's report of the interview states:

> Mr. Thomson further stated that he has not been threatened, nor had any security concerns, within the Torrance Police Department's jurisdiction. Mr. Thomson also stated that he has never been physically assaulted or robbed during the course of his duties, nor has he ever had to file a report with any police agencies in regards to threats made against him or his family. Mr. Thomson said if he talks with a potential client or family members of a potential client, and feels there is any type of risk monetarily or safety wise, he simply refuses to take the case. Mr. Thomson made very clear to this investigator that he understands there are risks that go with his occupation and he evaluates every bond with safety in mind, but his concerns are the "unforeseen" and "what ifs" that go along with the job.
> . . .
> [M]y investigation revealed:
> (a) The Applicant appears to be of good moral character.
> (b) The applicant has no prior convictions of a felony or any other crime that indicates moral turpitude.
> (c) **I was unable to determine/identify any specific or credible threats to the applicant.**
> (d) The applicant is a bona fide resident of the City of Torrance.
> (e) The applicant has successfully completed a designated course of training in the carrying, safety, and use of firearms.

(Neu Decl. Ex. C, at 56-57 (emphasis added).)

According to the CCW license application documents submitted by LASD, Plaintiff also applied for a CCW license with LASD on April 7, 2011. (*See generally* Tanaka Decl. Ex. 2.) The LASD application contained essentially the same information as the second TPD application. (*See generally* Tanaka Decl. Ex. 2; Neu Decl. Ex. C.) LASD sent Plaintiff a denial letter stating:

> Typically, the verbiage "convincing evidence of a clear and present danger . . . ." refers to a current situation which involves a specific person(s) who has threatened an individual and who has displayed a pattern of behavior which would suggest that the threat(s) could be carried out. Situations which would suggest only a potential danger to one's safety, (e.g. carrying large amounts of money to the bank, profession/job, working late hours in a high crime rate area. etc.) are not consistent with the criteria for issuance of a concealed weapon license.

(Tanaka Decl. Ex. 3.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-06154 SJO (JCx)</u>             DATE: <u>July 2, 2012</u>

Plaintiff's multiple applications for a CCW license show that the LASD and TPD licensing policies were applied to Plaintiff in a consistent manner. It is undisputed that Plaintiff provided no documentation or specific evidence in his applications to show that he faced particular threats to his safety. The Court finds that Plaintiff's applications failed to satisfy the statutory prerequisite of "good cause" under any reasonable interpretation - not just LASD's or TPD's. He provided no police reports or other documentation on any past or recent threats, assaults, or other types of danger. Given that Plaintiff's applications only spoke of a general sense of fear while performing his job, approving Plaintiff's applications would be tantamount to authorizing a professional exemption for bail agents. Such a professional exemption has never been recognized.

Indeed, if Defendant's policies had allowed such a general exemption, the policies could be declared unconstitutional for failing to rigorously differentiate between those who genuinely need a concealed gun for self-defense and those who do not.[5] *See Woollard v. Sheridan*, No. 10-CIV-02068, at 18-20 (D. Md. Mar. 2, 2012) (striking down an "overly broad" gun control law that did not adequately discriminate between those persons who are "deemed 'suitable'" to carry firearms and those who are "most likely to misuse" firearms); *Peruta*, 758 F. Supp. 2d at 1117. Defendants would simply be granting a professional exemption without discrimination, and the policies would not be reasonably adapted to further the compelling government objective of protecting public safety. *See id.*

    E.    <u>Prior Restraint</u>

The Court declines to apply First Amendment prior restraint analysis to Second Amendment claims. Plaintiff argues that "States and localities may not condition a license necessary to engage in constitutionally protected conduct on the grant of a license officials have *discretion to withhold*." (Mot. 5.) He adds: "Further, a host of prior restraint cases establish that the peaceful enjoyment of freedoms *which the Constitution guarantees* may not be made contingent upon the uncontrolled will of an official." (Mot. 5 (internal quotation marks omitted).) In a First Amendment context, any law that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official - as by requiring a permit or license which may be granted or withheld in the discretion of such official - is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958). If the licensing scheme "involves appraisal of facts, the exercise of judgment, and the formation of an opinion" by the licensing authority, then the danger of censorship and of abridgment of First Amendment freedoms is too great. *Forsyth County v.*

---

[5] The Court takes judicial notice of the District of Maryland court order in *Woollard v. Sheridan*, No. 10-CIV-2068 (D. Md. Mar. 2, 2012), which Plaintiff submitted. (*See generally* Pl.'s Supplemental Reply.) The case involved a restrictive Maryland carry license law that the district court struck down for not being "sufficiently adapted" to a significant government interest. *See Woollard*, 10-CIV-2068, at 18-20 ("If the Government wishes to burden a right guaranteed by the Constitution, it may do so provided that it can show a satisfactory justification and a sufficiently adapted method.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-06154 SJO (JCx)</u>  DATE: <u>July 2, 2012</u>

*Nationalist Movement*, 505 U.S. 123, 131 (1992) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)).

Certain courts have looked to First Amendment jurisprudence as a guide in developing a standard of review for the Second Amendment. *See, e.g.*, *Masciandaro*, 638 F.3d at 470*; Chester*, 628 F.3d at 682. However, "while the First Amendment undoubtedly provides a useful framework for analysis of laws burdening Second Amendment rights, especially when choosing the appropriate level of scrutiny, this Court would be hesitant to import constitutional doctrine wholesale from one field of law into another for which it was never designed." *See Woollard*, No. 10-CIV-02068, at 15. Because First Amendment rights are uniquely susceptible to a chilling effect, prior restraint of those rights naturally invokes a deep and serious concern. The same type of concern does not arise from the "prior restraint" of Second Amendment rights. The Court rejects Plaintiff's request to apply prior restraint analysis to his Second Amendment claim.

III.     <u>RULING</u>

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** LASD's Motion for Summary Judgment, and **GRANTS** TPD's Motion for Summary Judgment.

IT IS SO ORDERED.